UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORLANDO S. RAMIREZ and ALBERTO TORRES-HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>STI PREPAID LLC, STI PHONECARD, INC., TELCO GROUP, INC., VOIP ENTERPRISES, INC., AND LEUCADIA NATIONAL CORP., and ABC CORPS 1-25,<br><br>　　　　　　　　　Defendants. | Civil Action No. 08-1089 (SDW-MCA)<br><br>**OPINION** |

**WIGENTON**, District Judge

　　Plaintiffs Orlando S. Ramirez and Alberto Torres-Hernandez have filed a class action complaint against STi Prepaid LLC, STi Phonecard, Inc., Telco Group, Inc., VOIP Enterprises, Inc., and Leucadia National Corp. alleging violations of consumer protection statutes in New Jersey and New York, as well as other "sister states" including California, Connecticut, Florida, Illinois, Massachusetts, Maine, Vermont, Washington, and West Virginia.  Ramirez and Torres-Hernandez seek to represent a class of all consumers who purchased prepaid calling cards from Defendants beginning on January 1, 2004, or in the alternative, purchasers in the "sister states." Plaintiffs allege Defendants violated consumer protection statutes by marketing and selling prepaid calling cards but failing to adequately disclose various charges and fees associated with using the cards, thereby misleading consumers into believing they were purchasing more calling time than they actually received.

Before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants argue the Complaint should be dismissed because (1) the Complaint fails to meet the required pleadings standards under Fed. R. Civ. P. 8(a) (generally and specifically with regard to Defendant Leucadia); (2) the Complaint does not meet the heightened pleadings standards for fraud under Fed. R. Civ. P. 9(b); and (3) named Plaintiffs lack standing to bring claims on behalf of consumers in states other than those in which the named Plaintiffs actually purchased calling cards. For the reasons set forth below, Defendants' motion is denied in part and granted in part.

## I.   Factual Background and Procedural History

Defendants sell prepaid calling cards in denominations ranging from $2 to $100 through retail outlets including news stands, gas stations, and convenience stores. (Compl. ¶¶ 3, 25.) As the name suggests, consumers purchase a prepaid calling card for a specified sum in exchange for telephone calling time, including long distance. (*Id*. ¶ 25.) Defendants market their cards to ethnically diverse consumers in multiple languages. Some of Defendants' cards include "STi La Onda", "STi Mundo", "STi Muchacho", and "STi Que Pasa." (*Id*. ¶ 28.) To use the card, consumers dial an access code and enter a pin number imprinted on the card. (*Id*. ¶ 26.) A recorded message then states the remaining card value. (*Id*. ¶¶ 26, 30.) After each call, the calling time used, in addition to various fees and charges, are deducted from the balance on the card. (*Id*. ¶¶ 26, 29–30.) The cards do not state the per-minute cost of using the cards. (*Id*. ¶ 34.)

Torrez-Hernandez, a citizen of New Jersey, and Ramirez, a citizen of New York, allege they purchased prepaid calling cards from Defendants, who "imposed hidden conditions and costs that reduced the promised minutes of calling time, significantly reducing [the cards'] stated value." (*Id*. ¶ 29.) Plaintiffs contend that Defendants' cards "systematically, intentionally and surreptitiously" failed to disclose, or inadequately disclosed, pertinent information including the

2

price-per-minute for using the cards and the fact that Defendants impose (1) a per-call fee and the amount of that fee; (2) a higher rate for calling cellular phones and the amount of that rate; and (3) a weekly fee and when it applies.  (*Id*. ¶ 34.)  The Complaint alleges "were it not for the Defendants' course of conduct," Plaintiffs and the class they seek to represent "would not have purchased STI Cards or paid the full price on the cards."  (*Id*. ¶ 40.)

Torres-Hernandez initiated this action in New Jersey Superior Court on January 7, 2008.  Defendant STi Phonecard removed the case to this Court on February 28, 2008, pursuant to 28 U.S.C. §§ 1322 and 1441.  On July 28, 2008, a Consent Order was entered consolidating *Ramirez v. STi Prepaid, LLC*, et al., Civil Action No. 08-1735, with the instant case.  Plaintiffs filed a Consolidated Amended Complaint on August 18, 2008.  The pending motion to dismiss was filed on October 6, 2008, and Interim Class Counsel was appointed on December 17, 2008.

## II.     Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The adequacy of pleadings are governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Third Circuit has explained that this Rule "requires a 'showing' rather than a blanket assertion of an entitlement to relief" and that "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."  *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  A properly pled complaint must contain "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation."  *Id*. at 234–35.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

3

may be entitled to relief.'" *Id.* at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). In *Phillips*, the Third Circuit carefully considered the Supreme Court's holding in *Twombly* and stated:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. 1955).

### III. Discussion

#### A. Adequacy of the Pleadings under Rule 8(a)

Defendants argue that Plaintiffs' Complaint fails to satisfy basic pleading standards under Fed. R. Civ. P. 8(a) because it does not allege facts "showing" that Plaintiffs are entitled to relief. Defendants characterize the Complaint as a "formulaic, "cookie-cutter," and "fill-in-the-blanks" in part based on reference to nine other cases brought by Ramirez in this District against pre-paid calling card companies. (*See* Defs.' Br. 1 n.1.)

In order to state a claim under the New Jersey Consumer Fraud Act ("NJCFA"), "a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007)

4

(citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462–65 (1994)); *see also Kalow & Springnut, LLP v. Commence Corp.*, No. 07-CV-3442, 2009 WL 44748, at *3 (D.N.J. Jan. 6, 2009) ("To state a claim under the NJCFA, a Plaintiff must allege: (1) [U]nlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss."). Conduct prohibited by the NJCFA (and hence "unlawful") includes:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2.

Accepting the allegations in the Complaint as true, this Court is satisfied that the Complaint includes sufficient "grounds" to establish that Plaintiffs may be entitled to relief under the NJCFA. *See Phillips*, 515 F.3d at 232. First, the Complaint alleges Defendants' calling cards were marketed in a deceptive manner because they failed to adequately disclose the per-minute charges and the fees and costs associated with using the cards. (Compl. ¶ 37.) The Complaint includes an example of an allegedly deceptive calling card. (Compl. Ex. A.) The combination of this allegation and the example calling card is sufficient to claim "unlawful conduct" under the NJCFA.

The second element required to state a claim under the NJCFA, "ascertainable loss[,] . . . has been broadly defined as embracing more than a monetary loss. An ascertainable loss occurs when a consumer receives less than what was promised." *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646, 801 A.2d 361, 379 (Super. Ct. App. Div. 2002); *Miller v. Am. Family*

5

*Publishers*, 284 N.J. Super. 67, 91, 663 A.2d 643, 655 (Super. Ct. Ch. Div. 1995) (In order to prove "ascertainable loss" under the NJCFA, Plaintiffs need only establish they "received something less than, and different from, what they reasonably expected in view of defendant's presentations"); *see also Zebersky v. Bed Bath & Beyond, Inc.*, No. 06-CV-1735, 2006 WL 3454993, at *2–3 (D.N.J. Nov 29, 2006). Here, the Complaint alleges Plaintiffs received "a fraction of the calling time" they expected (Compl. ¶ 4) because of "hidden conditions and costs" (Compl. ¶ 29).

Finally, a causal relationship between the unlawful conduct and the loss is established in that the Plaintiffs allege they would not have purchased the cards if the charges, fees, and actual per-minute value of the card was clearly disclosed. (Compl. ¶¶ 6, 40.) Hence, the Complaint contains sufficient allegations to state a claim under the NJCFA.

To state a claim under New York's consumer protection statute, N.Y. Gen. Bus. Law. § 349, plaintiffs must allege "(1) the act or practice was consumer-oriented, (2) the act or practice was misleading in a material respect, and (3) the plaintiff was injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). New York's consumer protection statute uses broader language than the NJCFA. *See Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 726 (D.N.J. 2008). While N.Y. Gen. Bus. Law. § 349 prohibits "deceptive practices . . . in the conduct of . . . trade or commerce," N.Y. Gen. Bus. Law § 349(a), the NJCFA prohibits "deception in connection with the sale or advertisement of any merchandise or real estate," N.J. Stat. Ann. § 56:8-2. *Joe Hand Promotions,* 567 F. Supp. 2d at 726. Because the Complaint contains adequate allegations to state a claim under the NJCFA, it is clear that the

6

Complaint also sufficiently states a claim under New York's broader consumer protection statute.

In sum, this Court is satisfied that when construed in a light most favorable to the Plaintiffs, the Complaint contains sufficient allegations to "suggest" the required elements of a claim under the NJCFA and New York's consumer protection statute and presents "enough facts to raise a reasonable expectation that discovery will reveal evidence" of those elements. *See Phillips*, 525 F.3d at 234.

### B. Adequacy of the Pleadings under Rule 9(b)

Because Plaintiffs' primary claim is brought under the NJCFA, the Complaint must meet the requirements of Fed. R. Civ. P. 9(b). *See Pacholec v. Home Depot USA, Inc.*, No. 06-CV-827, 2006 WL 2792788, at *2 (D.N.J. Sept. 26, 2006) (noting "a claim under the New Jersey Consumer Fraud Act must satisfy the specificity requirement of Fed. R. Civ. P. 9(b)"). Defendants argue that the Complaint is insufficient under the heightened pleading standards of Rule 9(b).

Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In meeting the particularity requirements of Rule 9(b), a plaintiff must plead "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004). In addition, Plaintiffs must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Lum*, 361 F.3d at 224. However, Plaintiffs "need not . . . plead the 'date, place or time' of the fraud, so long as they use an

7

'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery*, 742 F.2d at 791); s*ee In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 588 (D.N.J. 2001))). Because certain aspects of an alleged fraud may have been concealed by a defendant, courts apply Rule 9(b) "with some flexibility." *Rolo*, 155 F.3d at 658. As the Third Circuit has explained:

> While we have acknowledged the stringency of Rule 9(b)'s pleading requirements, we have also stated that, in applying Rule 9(b), courts should be "sensitive" to situations in which "sophisticated defrauders" may "successfully conceal the details of their fraud." Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed. Nevertheless, even when the defendant retains control over the flow of information, "*boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible*."

*Rockefeller Ctr. Properties*, 311 F.3d at 216 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir.1997) (internal citations omitted).

Defendants argue that the Complaint does not meet the requirements of Rule 9(b) because it fails to allege that: (1) Plaintiffs actually purchased a card from Defendants; (2) Defendants made misrepresentations that induced Plaintiffs to purchase the cards; (3) Plaintiffs were deceived by something said on the cards; (4) Plaintiffs actually received less calling time; or that (5) Plaintiffs received less calling time because of the imposition of fees that were not disclosed. (Defs.' Br. 2.)

8

Defendants' characterization of the Complaint is only partially correct. It is true that the Complaint does not contain allegations regarding the particular circumstances of each named Plaintiff's purchase of Defendants' calling cards. For example, the Complaint contains no allegation regarding the specific monetary value of the cards Plaintiffs allegedly purchased, when and where they purchased the cards, and how the monetary value of the cards they purchased was diminished by the charges and fees imposed. All this information is within Plaintiffs' exclusive knowledge and could have been alleged in detail.

However, Defendants are not correct in stating that the Complaint contains "no specific reference to any of the cards produced by Defendants." (Defs.' Br. 6.) To the contrary, the Complaint attaches a photocopy of one of Defendants' calling cards (Compl. Ex. A) and states that the "standard verbiage" on the back of the example card is the same as the language on the cards Plaintiffs purchased. In addition, contrary to Defendants' characterization, the Complaint alleges that Plaintiffs purchased Defendants' pre-paid calling cards. (*See* Compl. ¶¶ 1, 12, 30.) Although the Complaint does not allege that Defendants made affirmative misrepresentations, it does allege that Defendants failed to adequately disclose "material facts and conditions" including details of the charges and fees related to using the card. (*Id*. ¶¶ 5, 6, 29, 34.) The Complaint also alleges that Plaintiffs received "a fraction of the calling time" they expected (*see id*. ¶ 4), although it does not indicate what "fraction" Plaintiffs actually received. In addition, the Complaint alleges that Plaintiffs would not have purchased the cards if the charges, fees, and actual per-minute value of the cards were clearly disclosed. (*Id*. ¶¶ 6, 40.)

In support of their Rule 9 argument, Defendants rely on an opinion from this District involving a similar case brought by plaintiff Torres-Hernandez. *See Torrres-Hernandez v. CTI Prepaid Solutions, Inc.*, No. 08-CV-1057, slip op. (D.N.J. Dec. 17, 2008). In *CTI*, plaintiff

9

brought a class action under the NJCFA alleging Defendant defrauded consumers by selling pre-paid calling cards that did not provide the minutes of airtime advertised. *Id*. at 1. The Court dismissed the complaint without prejudice for failure to adequately state a claim under the NJCFA.

In *CTI*, plaintiff's complaint provided no specificity regarding Defendant's allegedly deceptive misrepresentations and instead made only general allegations. In addition, the *CTI* complaint "failed to specify which marketing or advertising materials allegedly mislead him." *Id*. at 11. In contrast, the Complaint in this case contains specific details regarding the information Defendants allegedly failed to adequately disclose on their calling cards, including the price-per-minute billing increment and the specifics of various fees and charges associated with using the cards. (*See* Compl. ¶¶ 34, 37.) The Complaint also attached a photocopy of a calling card, allegedly with the same disclosures as the ones Plaintiffs purchased. These allegations and others contained in the Complaint are sufficient to "inject[] precision and some measure of substantiation" into Plaintiffs' allegations. *See Rockefeller Ctr. Properties*, 311 F.3d at 216.

Construing the Complaint in a light most favorable to the Plaintiffs, this Court is satisfied that the allegations in the Complaint, including references to the example calling card attached as Exhibit A, go beyond "boilerplate and conclusory allegations" and have sufficient factual basis to "make their theoretically viable claim plausible." *Id.* at 216. Although devoid of certain details clearly within Plaintiffs' knowledge, this Court is satisfied that the Complaint meets the heightened pleading standard of Rule 9(b) and is sufficient to "place the defendants on notice of the precise misconduct with which they are charged." *See Lum,* 361 F.3d at 223–24.

10

## C. Standing

Defendants argue that the Plaintiffs lack Article III standing to bring claims based on violations of consumer protection laws in states other than New Jersey and New York. In support of this argument, Defendants cite examples of consumer protection statutes from these "sister states," most of which require a plaintiff to have been injured in that state in order to benefit from the statute's protections. Defendants reason that the class allegations should be dismissed because neither named Plaintiff claims to have been injured in any state other than New York or New Jersey. This argument is without merit.

The elements of standing are well-established:

> [I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact ( *i.e.*, a "concrete and particularized" invasion of a "legally protected interest"); (2) causation ( *i.e.*, a "fairly ... trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability ( *i.e.*, it is "likely" and not "merely 'speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Communications Co. v. APCC Services, Inc*. 128 S. Ct. 2531, 2535 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotation marks omitted); *see also Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 127 S. Ct. 2553, 2562 (2007) (To establish standing, "[a]plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief"); *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007).

In the class action context, named representative plaintiffs initially need only establish that they individually have standing to bring their claims. "The initial inquiry . . . is whether the lead plaintiff individually has standing, not whether or not other class members have standing." *Winer Family Trust*, 503 F.3d at 325–26. If the named plaintiffs bringing a class action claims

do not individually have standing to bring those claims, the case should be dismissed prior to the class certification process.  This is because "a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class."  *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000).  However, "'[o]nce threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense.'"  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 306–07 (3d Cir. 1998) (quoting 1 Newberg on Class Actions § 2.05 (3d ed. 1992)).  As Newberg explains:

> In a class action, those represented are, in the words of the Supreme Court, passive members of the class, in contrast to the named plaintiff who is actively prosecuting the litigation in their behalf.  These passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.  *Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.*  The fact that the plaintiff now seeks to represent the rights of absent parties because the case or controversy is common to those parties does not in any way create additional constitutional standing requirements.

William B. Rubenstein et al., 1 Newberg on Class Actions § 2:7 (4th ed. 2008) (emphasis added & footnotes omitted).

Defendants' argument appears to conflate the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23.  Defendants do not contest the fact that the named Plaintiffs have standing to bring their individual claims.  The Complaint makes clear that the so-called "sister state" consumer protection laws are only implicated by members of the putative

class.  (*See* Compl. ¶ 43.)  Hence, the fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial.  The issue Defendants raise is one of predominance—whether "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. Rule 23(b)(3).  *See generally* 7AA Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1780.1 (3d ed. 2008) (discussing the requirements of Rule 23(b)(3)).  This is an issue to be resolved at the class certification stage of the litigation.

In support of their standing argument, Defendants rely on *In re AIG Advisor Group Sec. Litig.*, No. 06-CV-1625, 2007 WL 1213395 (E.D.N.Y. April 25, 2007).  In that case, the representative plaintiffs filed a class action against AIG for violations of federal securities law related to its promotion of certain mutual funds.  *In re AIG* at \*1–2.  Although the named representative plaintiffs only owned 16 of the mutual funds, they sought to represent a class of plaintiffs who owned 19 funds.  The Court dismissed the complaint as to the funds the named plaintiffs did not own for lack of standing because "the named plaintiffs can allege no injury from the purchase or sale of funds they never invested in."  *Id*. at \*4.

Defendants' reliance on *In re AIG* is misplaced.  Here, unlike *AIG*, there is no dispute that the named Plaintiffs claim to have been injured by the same calling cards as the putative class plaintiffs they seek to represent.  The ability of the named Plaintiffs to adequately represent class plaintiffs in different states and the extent to which common issues of law and fact predominate across the putative class members are factors that will be considered in the class certification phase.

This case is directly analogous to *In re Grand Theft Auto Video Game Consumer Litig.* (No. II), No. 06-MD-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006). In that case, the named plaintiffs alleged that defendants violated the consumer protection laws of all fifty states and the District of Columbia by selling a video game under an inappropriate content rating. As here, Defendants in *Grand Theft Auto* argued that the named plaintiffs lacked standing to bring claims under the laws of states other than the five states in which the named plaintiffs had actually purchased the video game. The court denied defendants' motion to dismiss for lack of standing. The Court explained that "[t]he relevant question . . . is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do-but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is . . . appropriately answered through the class certification process." *Id.* at *3 (citing *In re Buspirone*, 185 F. Supp. 2d. 363, 377 (S.D.N.Y. 2002) (citations omitted); *see also Kuhl v. Guitar Center Stores, Inc.*, 2008 WL 656049, No. 07-C-214, (N.D. Ill. March 5, 2008) (rejecting, prior to the class certification stage, defendant's motion to dismiss for lack of standing the named plaintiffs' class action claims on behalf of plaintiffs in states other than Illinois, where named plaintiffs' injuries occurred). Here, like in *Grand Theft Auto*, the named plaintiffs have standing to bring their individual claims. That is all that is required at this stage of the litigation. The issue of whether common questions of law and fact predominate, as well the other prerequisites to certify a class under Rule 23, will be considered during the class certification process.

### D. Claims Against Leucadia

#### 1) Piercing the Corporate Veil

Defendants argue that claims against Leucadia should be dismissed because the Complaint does not allege Leucadia sold or marketed the calling cards and because Leucadia's ownership interest in STi is insufficient to impose liability. Plaintiffs argue that the Complaint contains sufficient allegations to suggest that Leucadia abused the corporate form, thus weighing against dismissal at this stage. Although not articulated explicitly, Plaintiffs appear to characterize the allegations against Leucadia as being sufficient to pierce its corporate veil. The only allegation in the Complaint specific to Leucadia states:

> Leucadia owns a 75% controlling membership interest in STI Prepaid, L.L.C. On March 8, 2007, Leucadia, through STI Prepaid, L.L.C., completed the acquisition of virtually all the assets and liabilities of . . . [other corporations named as Defendants] pursuant to an Asset Purchase and Contribution Agreement . . . . Leucadia conducts and manages its telecommunications (including Prepaid Calling Card sales) operation through STi Prepaid, L.L.C. . . . . Leucadia and STI Prepaid, L.L.C. share upper management personnel.

(Compl. ¶ 19.)

Under New Jersey law, a plaintiff may state a claim for piercing the corporate veil by showing: "(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc*. 296 F.3d 164, 171–72 (3d Cir. 2002) (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir.1988); *see also Pearson v. Component Tech. Corp.* 247 F.3d 471, 484 (3d Cir. 2001) (piercing the veil is appropriate "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime . . . or when the

15

parent so dominated the subsidiary that it had no separate existence." (internal quotation marks omitted)).

To succeed in piercing the corporate veil, a plaintiff must allege that the parent "completely dominate[s] the finances, policy, and business practice with respect to the subject transaction" to such a degree that the subsidiary has "no separate mind, will, or existence of its own." *Craig*, 843 F.2d at 150. The relevant factors in this inquiry include:

> Gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of the funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Id.* (quoting *American Bell, Inc. v. Fed'n of Tel. Workers*, 736 F.3d 879, 886 (3d Cir. 1984)); *Foodtown*, 296 F.3d at 172. It is well-established that "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *See Pearson*, 247 F.3d at 484; *Marzano v. Computer Sci. Corp.,* 91 F.3d 497, 513 (3d Cir. 1996) (citing *New Jersey Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983)); *see also Craig*, 843 F.2d at 150 (3d Cir. 1988) (a plaintiff must allege control by a parent over a subsidiary which is more than a "mere majority or complete stock control"). As such, Defendants correctly argue that Plaintiffs' allegation that Leucadia owned a 75% controlling membership interest in STi is insufficient by itself to pierce Leucadia's corporate veil.

A useful illustration of allegations sufficient to pierce the corporate veil can be found in *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002). In that case, the complaint alleged that a corporation and its alleged alter ego: "failed to maintain formal barriers between the management structures"; "commingled funds and other assets"; "failed to observe other corporate formalities"; "shared twelve of thirteen common

16

directors"; shared the same shareholders, the same principal office, and registered office; and were structured such that the Board of Directors of one corporation "was dominated and controlled" by the alter ego's Board. *Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (internal citations omitted). The Third Circuit found these allegations sufficient to meet the first prong of the veil-piercing test.

Based in part on the Third Circuit's analysis in *Foodtown*, a court in this District found allegations that one corporation was a subsidiary of another, that both corporations shared the same chief financial officer, and that one corporation had a controlling interest in the other to be insufficient to pierce the corporate veil. *See Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2007 WL 724352, at *7 (D.N.J. Mar. 17, 2008); *see also Ohai v. Verizon Commc'ns, Inc.*, No. 05-0729, 2005 U.S. Dist. LEXIS 25703 (D.N.J. Oct. 28, 2005) (refusing to pierce the corporate veil where the complaint predicated liability of two parent corporations on the sole allegation that they owned a 55% and 45% stake in a subsidiary).

In this case, Plaintiff's only allegations against Leucadia are that it: (1) owns a 75% controlling interest in STi; (2) aquired, through STi, assets of other defendant phone card companies; (3) "conducts and manages its telecommunications (including Prepaid Calling Card sales) operation through STi Prepaid"; and (4) shares upper management personnel with STi. Plaintiffs' brief re-characterizes these allegations, stating that "Leucadia acted through STI to purchase the Defendants[,] perpetuating the illegal scheme, and that by sharing executive management personnel, it was actually directing STI's actions in perpetuating the illegal scheme." (Pls.' Opp'n Br. at 20.) Plaintiffs also argue that these allegations are sufficient to show that Leucadia was "abusing the privilege of incorporation by using its subsidiaries to perpetuate a fraud and circumvent the law." (*Id.* at 21.) We disagree. The Complaint, even

17

construed in a light most favorable to the Plaintiffs, is devoid of allegations sufficient to suggest that Leucadia "completely dominated" STi's phone-card business or using STi in perpetrating a fraud. The Complaint lacks adequate allegations regarding how STi's "finances, policy, and business practice" related to the calling card business were dominated by Leucadia; what, if any, corporate formalities were disregarded; or other indicators to suggest Leucadia has "no separate mind, will, or existence of its own." *See Craig*, 843 F.2d at 150.

### 2) Agency Theory of Liability

Plaintiffs also argue that Leucadia could be held liable for STi's actions because STi was acting as Leucadia's agent in operating its calling card business. Plaintiffs state that "Leucadia is, in fact, the present mastermind behind STI's operation" and that "[a]s the principal directing its agents' actions, Leucadia is liable for any wrongdoing undertaken by its agents." (Pls.' Br. at 21.) Neither of these allegations is sufficiently pled.

Under an agency theory, "the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary. The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities." *Phoenix Canada Oil Co. v. Texaco, Inc.* 658 F. Supp. 1061, 1084 (D. Del. 1987); *Henry v. St. Croix Alumina, LLC*, No. 1999-0036, 2007 WL 6030275, at *9 (D.V.I. Aug. 10, 2007). Even if this Court were to construe the allegation that "Leucadia conducts and manages its telecommunications (including Prepaid Calling Card sales) operation through STi" (Compl. ¶ 19) as espousing an agency theory, the claim fails. That allegation, and the others related to Leucadia, do not set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of" an agency relationship. *See Phillips*, 515 F.3d at 234. Because the

Complaint fails to adequately allege a basis for Leucadia's liability, Leucadia is dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Complaint is denied with respect to all Defendants except Leucadia.  Defendant Leucadia is dismissed without prejudice.  However, Defendants are granted 30 days in which to file a Second Amended Complaint and re-plead allegations against Leucadia.

SO ORDERED.

s/ Susan D. Wigenton<br>
**Susan D. Wigenton, U.S.D.J.**

Dated:  March 17, 2009


cc:  Hon. Madeline Cox Arleo, U.S.M.J.