## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORLANDO S. RAMIREZ and ALBERTO TORRES-HERNANDEZ, individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> STI PREPAID L.L.C., STI PHONECARD, INC., TELCO GROUP, INC., VOIP ENTERPRISES, INC., and LEUCADIA NATIONAL CORP and ABC CORPS 1-25, <br><br><br>                 Defendants. | Civil Action No. 08-1089 (SDW) |

------------------------------------------------------------------------------------------------------------

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiff
ORLANDO S. RAMIREZ

Bruce H. Nagel
Elliot L. Pell
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Attorney for Plaintiff
ALBERTO TORRES-HERNANDEZ

# TABLE OF CONTENTS

Table Of Authorities ....................................................................................................ii

Preliminary Statement.................................................................................................1

Statement Of Facts.....................................................................................................3

        A.     Factual Background and Procedural History of This Action....................3

        B.     The Parties Agreed to the Settlement...................................................4

        C.     Reasons for the Settlement....................................................................5

Legal Argument

I

The Settlement With Defendants Should Be Enforced......................................................7

II

The Settlement Warrants Preliminary Approval...............................................................12

A.     The Standards for Preliminary Approval...............................................12

B.     The Proposed Method of Class Notice is Appropriate ..............................14

III

A Settlement Class Should Be Certified...........................................................................17

        A.     Numerosity.................................................................................18

        B.     Commonality................................................................................18

        C.     Typicality...................................................................................19

        D.     Adequacy of Representation ........................................................19

        E.     Predominance of Common Questions and
               Superiority to Other Methods of Adjudication ..............................20

Conclusion ..............................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc.* v. *Windsor,* 521 U.S. 591, 619 (1997)................................................... 17, 20

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ........................................................................... 18

*Beckton, Dickinson and Co., Inc. v. Piscataqua Transportation, Inc.*,
   2009 WL 3068216 (D.N.J. 2009) ............................................................................................. 7, 8

*Bistricer v. Bistricer*, 231 N.J.Super. 143 (Ch. Div. 1987)............................................................. 8

*Eisenberg v. Gagnon,* 766 F.2d 710 (3d Cir. 1985)...................................................................... 20

*Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F.Supp. 342 (D.N.J. 1996) ............... 7, 8

*Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461 (E.D.Pa. 2000) ..................................................... 18

*Girsh* v. *Jepson,* 521 F.2d 153 (3d Cir. 1975) ............................................................................. 14

*Green v. John H. Lewis & Co.*, 436 F.2d 389 (3d Cir. 1970) ......................................................... 8

*Hagrish v. Olson*, 254 N.J.Super. 133 (App.Div. 1992)................................................................. 8

*Horton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825 (E.D.N.C. 1994) ....... 13

*Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992).......................................... 19

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) .............................................. 14

*In re Bromine Antitrust Litig.*, 203 F.R.D. 403 (S.D.Ind. 2001).................................................. 13

*In re Community Bank of N. Va.,* 418 F.3d 277 (3d Cir. 2005)..................................................... 17

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................................. 12, 13, 17

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283 (3d Cir. 1998). ...... 17, 20, 21

*Jennings v. Reed*, 381 N.J.Super. 217 (App.Div. 2005) ................................................................. 7

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) .............................................................................. 20

*Pascarella v. Bruck*, 190 N.J.Super. 118 (App.Div. 1983)......................................................... 7, 9

*Ramirez v. Dollar Phone Corp.*, 2009 WL 3747215 (E.D.N.Y. 2009) .................................... 7, 9, 10

*Sanofi-Aventis US LLC v. Sandoz, Inc.*, 2009 WL 3230867 (D.N.J. 2009).................................... 9

*Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001)................................................................. 18, 19

*Williams* v. *Vukovich,* 720 F.2d 909 (6th Cir. 1983) ................................................................... 13

*Zimmer Paper Prods., Inc.* v. *Berger & Montague, P.C.,* 758 F.2d 86 (3d Cir. 1985) ............... 15

**Rules**

Fed.R.Civ.P. 23 ....................................................................................................................... passim

**Treatises**

2 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.41 ............................................ 12

38 J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 23.80[2.-1]................................ 13

MANUAL FOR COMPLEX LITIGATION (SECOND), § 30.44 (1985) .................................................. 13

MANUEL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995) ...................................................... 12

## PRELIMINARY STATEMENT

Plaintiffs move to enforce and for preliminary approval of the settlement which had been agreed to by the parties.  As a result of direct negotiations between counsel and private mediation with former Magistrate Judge John Hughes, the parties reached an agreement on all material substantive terms of the settlement of the class' claims.  The only issue which the parties could not reach agreement upon – and which did not impact the validity of the class agreement – was the quantum of attorney's fees to be paid by defendants.  As a consequence, the Honorable Madeline Cox Arleo, U.S.M.J., scheduled a settlement conference to attempt to find common ground on the attorney fee issue.  Judge Arleo was successful and at the conference with the Court an agreement on attorney's fees was arrived.  These facts are beyond question and unequivocally establish that: (1) a complete agreement was reached on all material terms of not only the class' claims, but the quantum of attorney's fees to be paid; and (2) that defendants' have no basis in law or fact for their current refusal to perform.

Subsequent to the successful settlement conference with Judge Arleo, Class Counsel undertook the laboring oar of drafting a settlement agreement.  For their part, Defendants' sent at least two letters to the Court, confirming what occurred at the conference with Judge Arleo – a settlement had been arrived at.  *See* Cecchi Dec., Exs. A and F.

Unfortunately, finalizing the settlement document was first delayed by summer vacation, and then (understandably) by the illness of one of defense counsel's children.  After defense counsel returned to work, however, fate intervened.  Two unrelated events transpired which defendants are now using as little more than excuse to justify their refusal to perform the agreement that they made.  First, in an identical calling card against a competitor of STI which was pending in the Eastern District of New York,  *Ramirez v. Dollar Phone Corp*., Hon. Jack B.

Weinstein issued an opinion which was unfavorable to the Class and granted summary judgment to Dollar.  Second, in a case pending in this district against another competitor of STI, *Coppolino v. Total Call*, Civil Action No. 08-539(FSH), Class Counsel received an objection from various State Attorney's General as to the substance and form of the Total Call settlement agreement, an agreement which is substantially the same as the one entered into here.  Specifically, when the objections were filed in Total Call, counsel for STI delayed providing Class Counsel with comments to the Settlement Agreement telling Class Counsel that they wanted to see how Judge Hochberg ruled.  Ultimately, at the Final Fairness Hearing in Total Call, which STI's counsel attended, Judge Hochberg indicated that she would approve the proposed agreement over the State AG's objections, which she did by way of Order dated December 29, 2009.  (*Total Call* Docket Entry 89). Despite this, STI still refused to perform and honor the deal it made with the assistance of Judge Hughes and Judge Arleo.

On January 5, 2010, for the first time, defense counsel informed Class Counsel that – in light of Judge Weinstein's decision in *Dollar*, and the objections lodged in Total Call – they would not proceed with the settlement and did not believe that there was an agreement between the parties.  Defendants' position is, plain and simple, an attempt to exploit unrelated events to walk away from a legitimate bargain they made.  Their position is frivolous and they should be compelled to perform the deal they made.

### STATEMENT OF FACTS

**A.    Factual Background and Procedural History of This Action**

Plaintiffs brought this action individually and on behalf of "all persons who purchased prepaid calling cards which were produced, sold, or distributed by STI throughout the United States." They allege that STI sells and markets calling cards that advertise a certain amount of airtime minutes, but that do not actually deliver those minutes to the consumer. Plaintiffs further claim that the value of STI's cards, *i.e.,* the minutes delivered by the cards, is reduced by charges and fees that STI imposes that are either not disclosed, or are inadequately disclosed, to consumers. The class definition includes individuals from all 50 states, as STI's prepaid calling cards are sold throughout the United States.

In the Consolidated Amended Complaint, Plaintiffs allege that STI has employed unlawful, unfair and deceptive practices in the manner in which it markets and sells its prepaid calling cards. Plaintiffs further allege that STI markets its cards primarily to low income and immigrant consumers who are particularly vulnerable to the alleged deceptive practices. They claim that they have suffered a variety of injuries as a result of these alleged practices. The Consolidated Amended Complaint asserts three specific claims: (1) violation of "substantially similar consumer fraud statutes of certain States", including New Jersey as well as California, Connecticut, Florida, Illinois, Massachusetts, Maine, New York, Vermont, Washington, and West Virginia; (2) unjust enrichment; and (3) declaratory relief. Plaintiff seeks damages, injunctive relief and attorneys' fees as to each claim.

As part of formal discovery, and informally in preparation for mediation with Judge Hughes, the parties exchanged information which would form the basis of an intelligent settlement discussion.  Taking that information and information which Plaintiffs' counsel had

gathered as part of its pre-filing investigation, the parties were able to reach a mutually acceptable structure for the settlement.

**B.      The Parties Agreed to the Settlement**

As is set forth in more detail in the accompanying Declaration of James E. Cecchi, the parties agreed to the settlement.  In May 2009, the parties mediated the case with Hon. John Hughes.  As a result of the mediation session and follow-up negotiations with and without Judge Hughes' involvement, the parties reached an agreement on all material terms of the settlement except for attorney's fees.  In a settlement conference with Judge Arleo on July 27, 2009, the parties were able to resolve the amount of attorney's fees, subject to Court approval.

The settlement resolves all claims asserted against STI by the members of the Settlement Class upon the following terms, by which STI agreed to:

- Provide refund PINs of a value of up to $7.4 million for Class members submitting claims for use for domestic long distance calls and international long distance calls to selected countries.  The refund PINs will have a value of 50¢ at 10¢ per minute for domestic calls and 25¢ per minute for international calls to listed international destinations.

- Provide prospective free or discounted minutes worth up to $1 million to future purchasers of STI calling cards.

- Attorneys fees of up to $2,050,000, subject to approval by the Court.

The settlement also provided for the form and manner of class notice, the method through which the proceeds of the settlement will be provided to Settlement Class Members, and the procedure by which class counsel will apply for attorneys' fees and reimbursement of expenses

incurred in prosecuting this action. Thus, the Agreement contemplates that plaintiff will seek and obtain certification of the Settlement Class to effectuate both the Settlement and the Notice Plan.

Thereafter, Defendants' counsel twice confirmed to the Court that the case had been settled. Class Counsel sent a draft settlement agreement to Defendants' counsel in mid-August. Due to unfortunate personal events, Defendants' counsel was not able to look at the agreement until the end of September. Thereafter, Defendants' counsel dawdled in reviewing the draft settlement agreement through October.

At the end of October, certain state attorneys general filed an objection to the *Total Call* settlement. Since the settlement here was substantially similar to the *Total Call* settlement, Defendants waited to see how the *Total Call* objections were resolved. However, at no time did Defendants ever express to Plaintiffs that no settlement had been agreed to or that the draft settlement agreement did not accurately reflect the material terms of settlement. Defendants' behavior was entirely consistent with the case being settled, including twice advising the Court of this fact.

After New Years', however, Defendants changed their position and now claim no settlement was ever agreed to. This position is contrary to their statements and objective behavior since July 2009. For the reasons set forth below, the settlement should be enforced.

### C.    Reasons for the Settlement

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, and the likelihood of successfully obtaining or defeating class certification, and then prevailing on the ultimate merits of the suit, while being mindful of the considerable burdens and risks of litigation. In light of the risks of continued litigation, Plaintiffs and their counsel believe that the Settlement, which

provides benefits worth $8.4 million and requires STI to bear all costs of notice, administration, and attorneys' fees and expenses, represents an excellent result for the members of the Settlement Class, and merits preliminary approval.   For the reasons set forth below, the settlement should receive preliminary approval.

**LEGAL ARGUMENT**

**I**

**THE SETTLEMENT WITH
DEFENDANTS SHOULD BE ENFORCED**

Plaintiffs move to enforce the settlement which was agreed to by the parties.  The settlement which was reached was fair, reasonable and adequate and there was a meeting of the minds on its terms.  However, since the time that the settlement was agreed to, the State AGs objected to the settlement in *Total Call* and Judge Weinstein in the Eastern District of New York dismissed a substantially similar calling card case, *Ramirez v. Dollar Phone Corp*., 2009 WL 3747215 (E.D.N.Y. 2009).  Viewing these events as unfavorable to Plaintiffs' position, STI now wishes to back out the settlement it had previously agreed to.  It cannot do so.  The settlement in this case was and is a "done deal", subject only to approval of the Court.  It should be enforced and approved.

State law governs the construction and enforcement of settlement agreements in federal court.  *Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F.Supp. 342, 348-49 (D.N.J. 1996).  Under New Jersey law, an agreement to settle a lawsuit is a contract which may be freely entered into and, absent a demonstration of fraud or other compelling circumstances, will be honored and enforced by the Court.  *Id.*; *Jennings v. Reed*, 381 N.J.Super. 217, 227 (App.Div. 2005).  The settlement of litigation ranks high in New Jersey's public policy.  *Pascarella v. Bruck*, 190 N.J.Super. 118, 125 (App.Div. 1983).  Because of this strong public policy, courts will "strain" to uphold settlements.  *Beckton, Dickinson and Co., Inc. v. Piscataqua Transportation, Inc.*, 2009 WL 3068216 at *3 (D.N.J. 2009); *Shernoff v. Hewlett-Packard Co.*, 2006 WL 3497798 at *2 (D.N.J. 2006).

An agreement to settle a lawsuit is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing. *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); *Pascarella*, 190 N.J.Super. at 124 . In order for a settlement agreement to be enforceable, the parties need only reach a definite agreement on the basic essentials of the settlement. *Hagrish v. Olson*, 254 N.J.Super. 133, 138 (App.Div. 1992). "So long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Excelsior Insurance*, 975 F.Supp. at 349. *Accord Beckton, Dickinson* at *3; *Shernoff* at *2. "[T]he proposition that a case is not settled until the last 'i' is dotted and the last 't' is crossed on a written settlement agreement carries the germ of much mischief. A party could, in bad faith, waste the time of the court and the other litigant in protracted settlement negotiations, and then, after a 'framework' has been established, wiggle out of that framework by creating a flood of new issues and questions. Conceivably, that could be the case here." *Bistricer v. Bistricer*, 231 N.J.Super. 143, 152 (Ch. Div. 1987). This is exactly what is afoot here – mischief by defendants who now, in light of unrelated developments in other cases – which to renegotiate and/or back out of the bargain they made. The law does not permit this type of transparent gamesmanship.

Here, the Declaration of James E. Cecchi and the emails exchanged between the parties confirm that the parties agreed to all the essential terms of a settlement. Defendants' actions following the mediation with Judge Hughes and the settlement conference with Judge Arleo are solely consistent with the case being settled. Indeed, the Court itself will recall that there was no question whatsoever that the case was settled as to the class agreement before the July settlement conference with Judge Arleo, and that the sole remaining issue left open after the mediation –

attorney's fees – was resolved by Judge Arleo.  If there were any conceivable doubt about this point, defendants' themselves twice advised the Court that the case was settled. (Docket Entries 56, 58; Cecchi Dec., Exs. A and F) *Compare Sanofi-Aventis US LLC v. Sandoz, Inc.*, 2009 WL 3230867 (D.N.J. 2009)("The Court finds that the parties reached a binding settlement agreement. As an initial matter, the parties advised the Court on more than one occasion of their intent to reach a binding settlement agreement.")

Under well-settled New Jersey law, this settlement should be enforced in accordance with its terms, notwithstanding the fact that a formal settlement agreement was never executed and STI now wishes to back out of the deal.  There was a meeting of the minds between the parties with respect to the essential terms of the settlement, which is all that is necessary for its enforcement.  STI should not be allowed to now back out of the settlement because it has had a change of heart.  "If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand." *Pascarella*, 190 N.J.Super. at 126.  "[S]econd thoughts are entitled to absolutely no weight as against our policy in favor of settlements." *Dept. of Public Advocate v. N.J. Board of Public Utilities*, 206 N.J.Super. 523, 530 (App.Div. 1985).

It is indeed ironic that Defendants rely upon the *Dollar* decision as a basis for reneging on the settlement, since Judge Weinstein's decision had nothing to do with the ultimate merits of the case.[1]  Indeed, Judge Weinstein noted:

---

[1]     Plaintiffs agree with Judge Weinstein on a theoretical level that uniform federal regulation of calling cards would be the ideal solution to the deceptive practices in the industry, no such uniform federal regulation presently exists.  *Dollar*, at *13-19.  Judge Weinstein was incorrect, however, in holding that a class could never be certified on that basis.  Among the requirements for class certification is that "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed.R.Civ.P. 23(b)(3).  Federal enforcement might arguably be "superior", but it is not an "available" method of adjudicating the controversy, since the bills giving the FTC authority to regulate the calling card industry failed to pass in the last Congress and are stalled in committee in the present Congress.  Cheated class members

Deceptive and abusive practices in the prepaid calling card industry have been widely documented. Senator Bill Nelson of Florida, in his remarks upon introducing the proposed Prepaid Calling Card Consumer Protection Act of 2009, observed that "[u]nfortunately, some providers and distributors of these cards are scamming consumers-by imposing undisclosed junk fees, charging exorbitant rates, and selling cards that expire shortly after consumers start using them." Recent law-enforcement investigations have found "unfair and deceptive business practices," including "charging customers for calls where they receive busy signals, imposing weekly 'maintenance fees' that may take away up to 20 percent of the card's overall value, and billing for calls in 3-minute increments." Based on empirical research in this area, one expert has concluded that "[b]ecause accurate and complete information typically isn't available, it is impossible for consumers to make informed decisions before using the cards.... [I]nformation is often confusing, incomplete, and even deceptive."

Purchasers are typically low-income consumers who cannot afford traditional phone service; many of them are recent non-English-speaking immigrants who use the cards to telephone their families abroad. The industry's problems are of special concern because the cards are widely marketed to this particularly vulnerable group.

The industry's deceptive practices have been the subject of extensive, repetitive private litigation as well as repeated enforcement actions by the FTC and several state Attorneys General.

*Dollar*, at \*1-2 (internal citations omitted).  Judge Weinstein noted that investigations of the calling card industry have found that customers generally received only half of the calling time they should have received.

Law enforcement agencies and researchers investigating the industry have discovered widespread discrepancies between the amount of calling time claimed in advertising and marketing materials, and the calling time actually available to card users. In tests conducted by the FTC in connection with recent enforcement actions, the cards were found to provide half or less than half of the advertised minutes. Surveys of a range of prepaid cards by the nonprofit Hispanic Institute yielded similar results. Another study of calling cards marketed to Spanish-speaking consumers found that "[m]inutes are often deducted for hidden fees, and consequently, consumers do not receive the number of minutes they are told are available.... The average actual cost of the cards was 87% higher than the average expected cost."

---

should not have to pin their hopes of recovery upon Congress acting on their behalf.

Underlying these findings are often-inadequate disclosures of costs, as well as consumer confusion and complex fee calculations, which involve minute-rounding, per-call fees, periodic retention-of-card fees, and other types of charges and surcharges. Compounding these problems are customer service representatives, theoretically available through toll-free numbers, who often provide incomplete or inaccurate information, or who cannot be reached.

*Dollar*, at *3-4 (internal citations omitted)

STI's change of heart adds insult to already inflicted injury to the settlement class. Having already defrauded its customers of half of the calling time it promised, STI seeks to back out of a bargain which will at the least provide a modicum of recovery to the Class and has justified its decision by relying upon the excoriating words of Judge Weinstein which document the very abuses this lawsuit was about. STI should not be allowed to escape from compensating the victims of its fraud by backing out of a settlement which was agreed to six months ago. The settlement should be enforced and, for the reasons set forth below, it should be preliminarily approved.

## II

## THE SETTLEMENT WARRANTS
## PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. There are three steps to be taken by the Court: (1) the Court must preliminarily approve the proposed settlement; (2) members of the Settlement Class must be given notice of the proposed settlement**;** and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable and adequate. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) (*"GM Trucks"*)*; see also* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995).

### A.   The Standards for Preliminary Approval

Before sending notice of the Settlement to the Settlement Class, the Court should approve the Settlement preliminarily. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of possible approval". MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 237 (1995). This preliminary determination establishes an initial presumption of fairness when the court finds that (1) the negotiations occurred at arms' length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *See* 2 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.41, at 11-9; *GM Trucks,* 55 F.3d at 785. *See also* MANUAL FOR COMPLEX LITIGATION (THIRD)§ 30.41, at 236 (1995).

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That decision is made only at the final approval stage, after notice of the settlement has been provided to the class members and

they have had an opportunity to voice their views of the settlement. *See* 38 J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 23.80[2.-1] at 23-479. Preliminary approval is merely the prerequisite to providing such notice, so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Williams* v. *Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983).

As noted by the Third Circuit Court of Appeals, "[the] preliminary determination establishes an initial presumption of fairness". *GM Trucks*, 55 F.3d at 785. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing" MANUAL FOR COMPLEX LITIGATION (SECOND), § 30.44 (1985).

Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*., 203 F.R.D. 403, 416 (S.D.Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Id.* Here, experienced counsel for the parties, after a long course of adversarial negotiations, supervised mediation and settlement discussions, have concluded that the proposed Settlement is in the best interests of their respective clients (and, in the case of Plaintiffs' counsel, of the Settlement Class). The parties had ample opportunity to fully inform themselves

13

regarding the merits of their and their adversary's claims and defenses.  Further, the Settlement does not favor one group of putative class members over others, or provide richer results for the named plaintiff class representatives.

In addition, the Settlement Agreement satisfies a preponderance of the nine factors enunciated in *Girsh* v. *Jepson,* 521 F.2d 153, 157 (3d Cir. 1975), and is thus fair, reasonable and adequate. Specifically, the proposed class settlement offers plaintiffs several advantages, including compensation for their alleged injuries with no obligation to pay attorneys' fees and a relatively speedy resolution of their claims. Considering the likely duration and complexity of the litigation  by comparison, the substantially similar settlement brokered by one of STI's competitors, which provided the initial framework for the agreement in this case, was arrived at after more than four years of costly litigation – and the risks of establishing damages in an industry where proof of purchase is rarely preserved by putative class members, the proposed settlement is significant when compared to the best possible recovery. Certainly, the Settlement falls within the "range of possible approval." It should, therefore, be submitted to the Settlement Class members for their consideration, and this Court should schedule a hearing to determine whether the Settlement is "fair, reasonable, and adequate" to the Settlement Class and should be approved by the Court.

**B.    The Proposed Method of Class Notice is Appropriate**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B); *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002). The notice must concisely and clearly state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class

14

certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and bow members may be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).

In this case, where the parties seek to simultaneously certify a settlement class and settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement). *See, e.g., Zimmer Paper Prods., Inc.* v. *Berger & Montague, P.C.,* 758 F.2d 86, 90-91 (3d Cir. 1985).

The proposed method of providing notice to the Settlement Class meets the requirements of Rule 23(c)(2) by providing for a comprehensive Notice Plan. As shown by the Agreement and enumerated in its exhibited proposed Order Granting Motion for Preliminary Approval of Class Action Settlement and Directing Dissemination of Class Notice (the "Proposed Order of Preliminary Approval"), the Settlement requires multiple forms of notice, including:

- By accessing a discrete settlement website and by posting notice of the settlement at www.freedweiss.com

- by publishing a summary form of the Notice (the "Summary Notice"), in a form substantially similar to that exhibited to the Agreement, as follows: as a national press release through PR Newswire (or similar entity), and one time per week for two consecutive weeks in USA Today, El Diaro (Spanish language), and La Opinion (Spanish language);

- by disseminating a notice in a form substantially similar to the Summary Notice to all persons to whom STI directly distributed or sold its calling cards during the preceding 120 business days, as well as to any additional person who directly

purchased such cards during the 45 business day-period following the date of the entry of the Proposed Order of Preliminary Approval;

- by posting at retail locations where STI calling cards are sold to the public a notice substantially similar to the Summary Notice;

- by providing direct mail notice to all calling card customers whose identification information is reasonably accessible from STI's business records; and

- by providing a notice voice prompt on all current STI calling card access numbers and customer service numbers until 14 business days prior to the fairness hearing seeking final approval of the Agreement.

The proposed Notice itself also meets the requirements of Rule 23(c)(2). The Notice is accurate and informative. It also describes the terms and benefits of the settlement, the date, time and place of the hearing on final settlement approval, the procedures and deadlines for submitting comments, objections, and requests for exclusion, the general terms of class counsel's application for attorneys' fees and expenses, a description of the proposed plan for providing the Refund PINs, and several other matters of possible interest.

## III

## A SETTLEMENT CLASS
## SHOULD BE CERTIFIED

It is well-settled that the Court may certify a class for settlement purposes, provided that it engages in a Rule 23(a) and (b) inquiry. *In re Community Bank of N. Va.,* 418 F.3d 277, 299 (3d Cir. 2005); *GM Trucks,* 55 F.3d at 786. While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc.* v. *Windsor,* 521 U.S. 591, 619, 622 (1997). The settlement is relevant in that "a district court need not inquire whether the case, if tried, would present intractable management problems." *Community Bank,* 418 F,3d at 300, quoting *Amchem Prods.,* 521 U.S. at 620 (internal citation omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 314 (3d Cir. 1998).

While STI would certainly argue that class issues, if the case were to be fully litigated on its merits, would present serious management problems, the Court need not be concerned with trial management issues in the settlement context. Instead, it need only consider "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Community Bank;* 418 F.3d at 299, quoting *Amchem Prods,,* 521 U.S. at 621. The facts here demonstrate the suitability of this action for class certification for settlement purposes. To be certified, a settlement class in which the class members receive money damages must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and the so-called "predominance of common issues" and "superiority of the class action device" requirements of Rule 23(b)(3). *Community Bank;* 418 F.3d at 302. In this case, each of the above requirements is fully satisfied.

17

A.    **Numerosity**

The class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(l).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham,* 275 F.3d 220, 227-28 (3d Cir. 2001). "Class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 467 (E.D.Pa. 2000). Although the precise number of Settlement Class members cannot be determined because all of STI's end users purchased its calling cards at local retail locations (such as convenience stores) without providing any personal identification information, by its very nature, the Settlement Class includes literally thousands of members. Thus, numerosity is readily established.

B.    **Commonality**

The commonality requirement is satisfied if the named plaintiff share at least one question of fact or law in common with the class.  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "Because the requirement may be satisfied by a single common issue, it is easily met." *Fry*, 198 F.R.D. at 467. Clearly, there are questions of law and fact common to the Settlement Class, the resolution of which would advance the litigation. *See id*. at 467 (existence of single common issue sufficient for certification). A simple reading of the Consolidated Amended Complaint demonstrates that there are numerous questions of law or fact common to the Settlement Class. These including whether: (1) STI misrepresented or omitted certain facts regarding the rates charged and costs related to its calling cards; (2) STI engaged in unlawful, deceptive, fraudulent, or misleading conduct regarding such calling cards; (3) Such alleged misrepresentations and omissions were material; (4) Such conduct violated the NJCFA and

similar consumer fraud statutes of other states; and (5) Plaintiffs and the members of the Settlement Class sustained damages as a result of the alleged misconduct, and, if so, the appropriate measure of such damages. The Settlement Class possesses sufficient commonality to merit certification.

### C.     Typicality

The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart,* 275 F.3d at 227. It is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Cases challenging the same unlawful conduct that affects both the named plaintiffs and the class usually satisfy the typicality requirement, even if varying fact patterns may underlie individual claims. *Baby Neal,* 43 F.3d at *58.* A claim will not be deemed atypical if it "arises from the same event or practices or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992). The typicality requirement is satisfied here, as plaintiff's claims, evidenced by the factual allegations in the Amended Complaint, mirror those of the Settlement Class.

### D.     Adequacy of Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A representative plaintiff must be able to provide fair and adequate protection for the interests of the class, That protection involves two factors: the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation, and he or she must not have interests antagonistic to those of

the class. *See, e.g., Prudential,* 148 F.3d at 312; *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982).

As was set forth in the prior motion for appointment of Interim Class Counsel, Plaintiffs' counsel are qualified, experienced and able to conduct this litigation. Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Freed & Weiss and Nagel Rice specialize in class action and other complex litigation in courts throughout the country, including consumer, securities, corporate governance, healthcare and antitrust litigation.  In addition, plaintiffs themselves will fairly and adequately represent the interests of the Settlement Class. Plaintiffs, like the rest of the members of the Settlement Class, purchased one or more types of STI's calling cards, and allege that they were harmed by STI's alleged misleading advertising regarding call rates and hidden charges and fees. In short, plaintiffs' interests are coextensive with — not antagonistic to — those of the unnamed, absent members of the Settlement Class.

### E.    Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The existence of individual questions of fact does not *per se* preclude class certification.  *Eisenberg v. Gagnon,* 766 F.2d 710, 787 (3d Cir. 1985). Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.,* 521 U.S. at 623.

Class certification is generally appropriate where a defendant has engaged in a pattern of uniform activity that is challenged by the complaint. *See id.* at 624 (predominance requirement

readily established in cases alleging consumer fraud); *Prudential,* 148 F.3d at 314-15 (predominance requirement satisfied where class members' claims arise from common scheme by defendant). In addition, the common question of law in this action – namely, whether STI's practice of allegedly concealing hidden and excessive usage charges or inadequately disclosing the "true costs" of using its calling cards violated the NJCFA and common law –predominates over any individual legal issues that may exist.  Certification of the Settlement Class is therefore warranted under Rule 23(b)(3) because questions of law and fact predominate over questions affecting only individual class members.

In addition, a class action is superior to other methods of litigation by the Settlement Class Members of the claims identified in the Amended Complaint. Each of those claims, taken individually, is of such a relatively low dollar value that, as a practical matter, absent the use of the class action device, it would be too uneconomical and inefficient for any individual plaintiff to finance a litigation asserting such claims through trial and appeal.

In sum, because each of the elements of Rule 23(a) and 23(b)(3) is satisfied, this action should be certified as a class action for purposes of effectuating the Settlement.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court enter an order: (1) enforcing the Settlement; (2) granting preliminary approval of the Settlement; (3) conditionally certifying the Settlement Class; (4) approving the method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider their request for final approval of the Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN,
Attorneys for Plaintiffs


By:___/s/ James E. Cecchi_____
          JAMES E. CECCHI

Dated:  January 8, 2010