James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiff
ORLANDO S. RAMIREZ

Bruce H. Nagel
Elliot L. Pell
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Attorney for Plaintiff
ALBERTO TORRES-HERNANDEZ

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORLANDO S. RAMIREZ and ALBERTO TORRES-HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>STI PREPAID L.L.C., STI PHONECARD, INC., TELCO GROUP, INC., VOIP ENTERPRISES, INC., and LEUCADIA NATIONAL CORP and ABC CORPS 1-25,<br><br>      Defendants. | Civil Action No. 08-1089 (SDW)<br><br><br><br>**DECLARATION OF**<br>**JAMES E. CECCHI** |

      JAMES E. CECCHI, ESQ., of full age, hereby declares under penalty of perjury as follows:

      1.     I am an attorney licensed to practice in New Jersey and am a member of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, co-Interim Lead Counsel for Plaintiffs and the

putative class in the above matter. I am fully familiar with the facts contained herein based upon my personal knowledge.

2.    In May 2009, Interim Class Counsel and counsel for Defendants mediated this case before Honorable John J. Hughes. After extensive negotiations and the continued help of Judge Hughes, the parties reached agreement on the terms of a Class Settlement Agreement. The unequivocal material terms of the agreement were as follows: (1) the establishment of a pool of refund pins to be made available to the Class in the amount of $7,400,000; (2) prospective discounts to the Class in the amount of $1,000,000; and (3) injunctive relief identical to that STI had agreed to with the New Jersey Department of Consumer Affairs for a period of 3 years.

3.    After the terms of the Class Settlement Agreement were arrived at, the parties, with Judge Hughes' oversight, separately negotiated the payment of a reasonable attorney fee. At that time, however, the parties were unable to agree upon the quantum of the attorney fee.

4.    As a result of the parties inability to reach agreement, on July 27, 2009, the Honorable Madeline Cox Arleo, U.S.M.J., conducted a settlement conference to determine if a reasonable attorney fee could be agreed upon. Judge Arleo's efforts were successful and at the conclusion of the conference the parties agreed upon the appropriate quantum of attorney fee, which was to be subject to Court approval.

5.    On August 7, 2009, counsel for Defendants confirmed in writing to the Court that the parties had reached a settlement, and forwarded a Consent Order extending Defendants' time to answer the complaint pending completion of the settlement paperwork. (Docket Entry 56; Exhibit A hereto).

6.    Following the agreement of all of the terms of the settlement, I prepared a draft settlement agreement memorializing the terms that the parties had agreed to, as well as draft notices and proposed preliminary and final approval orders. A copy of the draft settlement

agreement is annexed hereto as Exhibit B.  A copy of the draft notices are annexed hereto as Exhibit C.

7.      On August 12, 2009, Mr. Kole sent me an email asking about the status of the settlement agreement.  (Exhibit D)  The draft agreement was forwarded to Defendants' counsel on August 14, 2009.

8.      The draft settlement agreement fully and accurately memorialized the material terms of the agreement reached at the mediation and at the Court settlement conference.  In form, it is substantially similar to other calling card cases which Class Counsel and other counsel have settled in this District including cases against IDT, Total Call and Locus.

9.      Unfortunately, we did not receive any comments back from Defendants' counsel, but not for reasons having anything to do with the fact that no settlement had been agreed to.  Counsel was on vacation at the end of August, then Mr. Kole's son became seriously ill and was in the hospital for several weeks in September.  Obviously, Mr. Kole's son's health was a higher priority than reviewing the settlement papers at that time.

10.     Toward the end of September, I contacted John Goldman as to the status of his review of the settlement papers.  Mr. Goldman replied "Jim, Totally my bad.  Just been tied up with other things.  I will focus on this and get something to you ASAP, which will probably be early next week.  Sorry.  Hope all is well with you.  John."  Annexed hereto as Exhibit E are emails which were exchanged between the parties during this time period.

11.     At no time did Mr. Kole or Mr. Goldman ever indicate to me that the parties had not agreed to a settlement or that the papers did not accurately reflect the terms of the settlement.  Rather, the delay was occasioned, understandably, by the illness of Mr. Kole's son.

12.     On October 30, 2009, Defendants again confirmed the settlement in a letter enclosing a consent order further extending their time to answer, to complete the documentation

for the settlement. (Docket Entry 58, Ex. F hereto) The letter stated, in pertinent part, "As we have previously advised the Court, this matter has been settled pending execution of a formal written agreement and obtaining the necessary approvals."

13. After Mr. Kole returned to work and began to focus on this matter, two events occurred which, in my judgment, directly influenced STI to simply change its mind about the advisability of settling this case. These events, however, have nothing at all to do with the simple issue before this court, *i.e.*, did STI and Class Counsel reach agreement on a complete settlement of this matter, which they undoubtedly did.

14. The first event was the issuance of a decision in another calling card case by the Honorable Jack B. Weinstein, U.S.D.J. *Ramirez v. Dollar Phone Corp.*, 2009 WL 3747215 (E.D.N.Y. 2009). In his decision, Judge Weinstein granted summary judgment to defendant Dollar Phone. In so doing, Judge Weinstein made a number of observations about the utility of a private class action in a case such as this. In his judgment, the endemic fraud in the phone card industry was best rectified by a uniform national regulatory scheme as opposed to a national private class action. Of course, Judge Weinstein's observations and *dicta* do not change anything here.

15. The second event which occurred concerns the settlement of another class action involving a competitor to STI, Total Call, *Coppolino v. Total Call International*, Civil Action No. 08-539 (FSH). In *Total Call*, which settled for terms substantially similar to those agreed upon here, several State Attorney's General asserted various objections to the settlement at the end of October 2009. The objections were responded to and Total Call and Class Counsel made certain adjustments to the settlement to address some of the concerns raised by the State AG's. STI followed these developments closely and attended all of the public hearings before Judge

Hochberg including the Final Approval Hearing wherein Judge Hochberg indicated that she would enter a final order approving the settlement.

16.	At no time during the pendency of the proceedings before Judge Hochberg did Defendants advise me that there was some uncertainty about whether an agreement had been reached, or the terms of that agreement. To the contrary, Defendants' simply wanted to see how Judge Hochberg dealt with the *Total Call* objections.  On this point, I told counsel that I was willing either to tweak the settlement as we did in *Total Call*, or present it to the Court as it had been agreed to.  Indeed, in November 2009, I asked Defendants' counsel point blank whether they were backing out of the deal. I was told unequivocally that they were not.

17.	On January 5, 2010, I e-mailed defense counsel and advised them that unless I heard back from them as to the form of the agreement, I would be forced to seek court intervention.  In response to my email, Defendants' counsel called and for the first time advised me that in light of the *Total Call* objections and the adverse decision by Judge Weinstein in *Dollar*, Defendants refused to proceed with the settlement.  As a result, Interim Class Counsel determined to file this motion to enforce the settlement.

18.	The settlement which the parties agreed to was never conditional upon anything other than approval of the Court.  All of the material terms of the settlement were agreed to by the parties.  The settlement which was agreed to was fair, reasonable and adequate and should be enforced and preliminarily approved.

I hereby declare under penalty of perjury that the foregoing is true and correct.

                                              /s/ James E. Cecchi
                                              JAMES E. CECCHI

Dated: January 8, 2010