# Exhibit B

## CLASS SETTLEMENT AGREEMENT AND RELEASE

This Class Settlement Agreement and Release ("Agreement") is made and entered into this      day of August 2009, by and between the Settlement Class (as defined below), acting by and through plaintiffs in the above-captioned case, Orlando S. Ramirez and Alberto Torres-Hernandez ("Plaintiffs"), Plaintiff's counsel Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Freed & Weiss LLC, and Nagel Rice (collectively, "Plaintiffs' Counsel") and Defendants STI Prepaid L.L.C., STI Phonecard, Inc., Telco Group, Inc., VOIP Enterprises, Inc., (together "STI")

## BACKGROUND

WHEREAS, Plaintiffs, individually and on behalf of a nationwide putative class of all purchasers of STI's prepaid calling cards, filed Complaints encaptioned *Ramirez v. STI Prepaid LLC, et al*, Civil Action No. 08-1735 (FSH); and *Torres-Hernandez v. STI Prepaid LLC, et al.*, Civil Action No. 08-1089 (SDW) and a Consolidated Amended Class Action complaint was filed in Civil Action No. 08-1089 (SDW) on August 18, 2008 before the Honorable Susan D. Wigenton.  alleging, *inter alia*, that STI distributed or sold prepaid and rechargeable calling cards without fully disclosing the applicable rates and charges (the "Lawsuit").  Based on that allegation, the Plaintiffs alleged claims against STI in the Lawsuit for (a) violation of the unfair and deceptive practices acts and practices and other consumer protection laws of New Jersey and other states, including N.J.S.A. 56:8-2; Cal. Bus. & Prof. Code §§ 17200 *et seq.* and 17500 *et seq.*; Cal. Civ. Code §§ 1750 *et seq.*; Conn. Gen. Stat. § 42-110b(a); Fla. Stat. Ann. § 501.204; 815 ILCS § 505/1 *et seq.*; Mass. Gen. L. ch. 93A, § 2; Tenn. Code. Ann. §  47-18-104; Me. Rev. Stat. Ann. tit. 5 § 207; N.Y. Gen. Bus. Law § 349(a); Vt. Stat. Ann. tit. 9, § 2453; Wash. Rev. Code § 19.86.010 *et seq.*; and W. Va. Code § 46A-6-104; (b) unjust enrichment; and (c) declaratory relief;

WHEREAS, STI and the other Released Parties (defined below) deny any wrongdoing of any kind whatsoever, and, without admitting liability, nevertheless have agreed to enter into this Agreement to avoid further expense, as well as the burdens and risks of litigation; and

WHEREAS, Plaintiffs have agreed to serve as representatives of the Settlement Class, have been informed by their respective personal counsel of the duties and obligations of a class representative, are familiar with the pleadings in the Lawsuit and the results of the factual investigation undertaken by their counsel, and have been fully advised by such counsel as to the terms and effects of this Agreement, including the nature of the claims released, the potential for success if the Lawsuit were to be litigated to their conclusion, and the relief obtained by the settlement; and

WHEREAS, in evaluating the settlement set forth in this Agreement, Plaintiffs' Counsel have concluded that the benefits provided to the Settlement Class under this Agreement make a settlement with STI and the other Released Parties pursuant to such terms and conditions in the best interests of the Settlement Class in light of, among other considerations, the substantial benefits afforded to the Settlement Class, the uncertainties and difficulties associated with obtaining class certification for merits purposes, including issues of manageability and overcoming the legal and factual defenses that have been asserted by STI, the expense and length of time necessary to prosecute this action through trial, the uncertainties of the outcome of the Lawsuit; and the fact that resolution of the class claims, whenever and however determined, will likely be submitted for appellate review; and

WHEREAS, the Parties desire to compromise and settle all issues and claims relating to the allegations made in the Lawsuit or that could have been made under the facts alleged in the Lawsuit, by or on behalf of all persons included in the Settlement Class; and

WHEREAS, the parties, through their respective counsel, have engaged in extensive arm's length negotiations in reaching this Agreement, including a private mediation with retired United States Magistrate Judge John Hughes, extensive negotiations between counsel for all parties in both the Lawsuit, and the exchange of detailed information about STI's sales and revenues; and

WHEREAS, the Parties, and their respective counsel, believe that the terms of the settlement set forth in this Agreement are fair, reasonable and adequate; and

WHEREAS, the Parties desire and intend to seek Court approval of the settlement as set forth in this Agreement;

NOW, THEREFORE, it is agreed that in consideration of the promises and mutual covenants set forth in this Agreement and the entry by the Court of a Final Order and Judgment dismissing with prejudice the claims asserted in the Lawsuit and approving the terms and conditions of the settlement as set forth in this Agreement pursuant to Fed. R. Civ. P. 23(a) and b(3), the Lawsuit shall be settled and compromised on the terms and conditions set forth below.

The recitals stated above are true and accurate and are hereby made a part of this Agreement.

## **DEFINITIONS**

In addition to any definitions set forth above or elsewhere in this Agreement, the following terms, as used in the Agreement, shall have the meanings set forth below:

A.      The term "Agreement" means this settlement agreement and release, including its recitals and Exhibits.

B.      The phrase "Best Efforts" means the efforts that a reasonable person in the position of the Party would use so as to fulfill an obligation as diligently and expeditiously as possible.

C.      The term "Final Order and Judgment" means a final judgment and order of dismissal entered by the Court in the Lawsuit granting final approval of this Agreement, (including Plaintiffs' Counsel's request for attorneys' fees, costs, and other expenses and incentive awards), and entering a judgment according to the terms set forth in this Agreement.

D.      The phrase "STI Calling Card" shall mean any calling card, including, but not limited to, retail, prepaid, non-rechargeable and rechargeable calling cards, that was sold, serviced, distributed, or in any way placed in the stream of commerce in the United States by STI from the inception of STI's business in or about January 1, 2002, through the date of the entry of the Order of Preliminary Approval, including, but not limited to, the calling cards identified on the list annexed hereto as Exhibit A.  (Exhibit A does not purport to be a complete listing of all STI Calling Cards that were sold, serviced, distributed, or in any way placed in the stream of commerce by STI prior to the date of the entry of the Order of Preliminary Approval.  The omission of any STI Calling Card from Exhibit A shall not be construed as excluding such card or cards under this Agreement, although no cards were intentionally omitted from Exhibit A.)  STI Calling Cards sold, serviced, distributed or in any way placed in the stream of commerce in the United States by STI prior to the date of the entry of the Order of Preliminary Approval are covered by this Agreement, despite the fact that they may not be included by name in Exhibit A.  STI Calling Cards specifically does not include calling cards formerly sold or distributed by CVT Prepaid Solutions, Inc.

4

E.      The phrase "Claims Submission Period" shall mean the period beginning seven days after the Settlement Effective Date (as defined below) and ending six months thereafter.

F.      The term "Complaints" shall refer to the Complaints filed in the Lawsuit.

G.      The term "Court" shall refer to the United States District Court for the District of New Jersey.

H.      The term "Party" means Plaintiffs or STI, as the context dictates, and "Parties" means both Plaintiffs and STI.

I.      The term "Persons" shall refer to persons and entities, including, without limitation, any individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, or any other persons or entities.

J.      The phrase "Released Claims" shall refer to any and all claims, damages, suits, demands, liabilities, judgments, losses, and causes of action relating to STI Calling Cards from January 1, 2004 through the date of the entry of the Order of Preliminary Approval, of any kind or character, whether known or unknown, matured or unmatured, sounding in law or equity, seeking damages or any other relief (including attorneys' fees), that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, based upon any federal or state statutory or common law, including, but not limited to, claims sounding in tort, contract; and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, which claims, damages, suits, demands, liabilities, judgments, losses, or causes of action have been, might have been, are now, or could be asserted by any Plaintiff or any Settlement Class Member in an individual or representative capacity (including on behalf of the general public) arising out of, based upon, or

related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Lawsuits.

K.     The phrase "Released Parties" shall refer individually and collectively, as appropriate, to STI and to all of its predecessors and successors-in-interest, including, but not limited to, all of its respective past and present parents, subsidiaries, joint ventures, partnerships, related companies, affiliates, controlled entities, assignees, distributors (solely as to the distribution of STI Calling Cards), sub-distributors, or entities retained by distributors to distribute STI Calling Cards (solely as to the distribution of STI Calling Cards), retailers (solely as to the distribution of STI Calling Cards), customers (except Settlement Class members), unincorporated entities, divisions, groups, present or former directors, officers, members, agents, employees, representatives, administrators, insurers, indemnitees, and attorneys. Notwithstanding the foregoing, "Released Parties" specifically does not include CVT Prepaid Solutions, Inc.

L.     The phrase "Settlement Class" shall refer to all Persons who, at any time during the period of January 1, 2004 through the date of the entry of the Order of Preliminary Approval, purchased an STI Calling Card in the United States.  The Released Parties, and their respective officers, directors, employees, and counsel, and Plaintiffs' Counsel, are not included in the Settlement Class.  All federal judges and members of their families within the first degree of consanguinity, and officers and directors of the Settling Defendants, are also excluded from the Settlement Class.

M.     The phrase "Settlement Class Member" shall refer to any Person included within the Settlement Class who does not timely exercise his or her right to opt out of the Settlement Class pursuant to Section 10 below.

N.      The phrase "Settlement Effective Date" shall mean the later of the date upon which all appeals, if any, from the Final Order and Judgment have been finally concluded and exhausted, or the date upon which the time to seek any appellate remedy (including rehearing or *writ of certiorari* to the United States Supreme Court) from the Final Order and Judgment has expired.

## TERMS OF AGREEMENT

1.      **Non-Admission of Liability.**  This Agreement is for settlement purposes only, and neither the fact of, nor any specific provision contained in, this Agreement nor any action taken hereunder shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged by Plaintiffs or by any other Person included within the Settlement Class of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Released Parties. This Agreement constitutes a compromise pursuant to Fed. R. Evid. 408(a) and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable.  It shall not be offered or be admissible, either in whole or in part, as evidence against the Released Parties, except in any action or proceeding to enforce its terms.

2.      **Settlement Class**.  For purposes of settlement only, and not for purposes of liability, and subject to Court approval, the Action will be certified as a nationwide class action, pursuant to Fed. R. Civ. P. 23(a) and b(3), with the members of the certified class to comprise only those Persons defined above as the Settlement Class.  Subject to the terms and conditions of this Agreement, the Parties agree not to oppose any efforts to certify such a class.  Any certification pursuant to this Section shall not constitute, in this or any other proceeding, an admission, finding or evidence that any requirement for class certification is otherwise satisfied, except for the expressly enumerated purposes in this Agreement.

3.    **Preliminary Approval**.  No later than 30 business days from the date of full execution of this Agreement (unless such time is extended by mutual agreement of the Parties), Plaintiffs and STI, through counsel, shall present this Agreement to the Court by way of motion seeking certification of the Settlement Class and preliminary approval of this Agreement (the "Submission for Preliminary Approval").  In connection with the Submission for Preliminary Approval, Plaintiffs and STI, through counsel, shall apply for an order substantially in the form of Exhibit B to this Agreement ("Order of Preliminary Approval").  The Submission for Preliminary Approval shall request:

>    a.    Preliminary approval of the Agreement;
>
>    b.    Certification for settlement purposes of the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3);
>
>    c.     Appointment of Plaintiffs' Counsel as counsel for the Settlement Class;
>
>    d.    Appointment of Plaintiffs as class representatives for the Settlement Class; and
>
>    e.    Approval of the proposed notices in forms substantially similar to those attached hereto as Exhibits C and D.

4.    **Notice to Settlement Class**.  No later than 20 business days after the entry of the Order of Preliminary Approval (unless otherwise specifically modified below), at its sole expense STI shall cause notice to be disseminated as directed in the Order of Preliminary Approval in a form substantially similar to that attached as Exhibit C to this Agreement (the "Settlement Notice"), as follows:

>    a.    By accessing a settlement website through a link resolving at the Uniform Resource Locators resolving at the domains www.stisettlement.com, or such other domain as agreed to by the parties, (the "STI Settlement Website") and www.freedweiss.com (collectively the "Settlement Websites").  The Settlement Websites shall be in both English and Spanish;

b.      In addition, STI shall publish a summary form of the Notice, in both English and Spanish (the "Summary Notice"), in a form substantially similar to that attached as Exhibit D to this Agreement, as follows: as a national press release via PR Newswire (or similar entity), one time per week for two consecutive weeks in USA Today, El Diario (Spanish language) and La Opinion (Spanish language).

c.      In addition, no later than 35 business days from the date of the entry of the Order of Preliminary Approval, STI shall disseminate to all Persons to whom it has directly distributed or sold STI Calling Cards during the preceding 120 business days, as well as to any additional Persons who purchase STI Calling Cards directly from STI during the 45 business day-period following the date of the entry of the Order of Preliminary Approval, a notice in a form substantially similar to the Summary Notice, to be posted at retail locations where STI Calling Cards are sold to the public in both English and Spanish (the "Posted Notice").  STI shall request that such Persons use Best Efforts to ensure that the Posted Notice is posted in retail locations where STI Calling Cards are sold and in a place where the Posted Notice will be visible to the retail locations' customers.  However, the failure of any retail location to display the Posted Notice, despite STI's or its distributors' request to do so, shall not constitute a breach of this Agreement.  STI shall use its Best Efforts to ensure that the Posted Notice shall be posted until the end of the Claims Submission Period.  STI will print ~~on~~ or attach as a paper insert ~~all~~ a copy of the Summary Notice on all Calling Cards sent to its distributors during the Claims Submission Period.

d.      STI will provide direct mail notice, in both English and Spanish to all calling card customers whose identification information is reasonably accessible from STI's business records, and to all its current and former rechargeable calling card customers to the

9

extent that it has records of such customers' mailing addresses.  Direct mail notice will be in a form substantially similar to that set forth in Exhibit C to this Agreement.

   e. In addition, STI will provide a notice voice prompt on all current STI Calling Card access numbers and customer service numbers until 14 business days prior to the fairness hearing seeking final approval of this Agreement (pursuant to sections 9 and 10 below). The voice prompt will be made available in English and Spanish, and in a form substantially similar to the Summary Notice.

   f. STI will establish a dedicated, toll-free telephone number that Persons can call to hear information regarding the settlement in both English and Spanish, including the status of the Claims Submission Period.  This toll free number will be printed on all STI calling cards for a period of 90 days commencing 10 days after the entry of the Order of Preliminary Approval and shall state: ""STI has settled a consumer class action suit regarding allegations of failing to clearly dislose fees, charges and rates.  To object, opt out of, or participate in the settlement, call XXX-XXX-XXXX or go to www._____.com/news."".  This toll-free number will be available 20 business days after the entry of the Order of Preliminary Approval through the end of the Claims Submission Period.  STI also will place information regarding the status of the Claims Submission Period on the STI Settlement Website, starting 20 business days after the entry of the Order of Preliminary Approval and continuing until the end of the Claims Submission Period.  In addition, STI will place a bill notice containing substantially all of the information set forth in the Short Form Notice in the package containing STI calling cards for a period of 90 days commencing 10 days after the entry of the Preliminary Approval Order.

g.      In addition, the Parties have agreed on the terms of a joint press release containing the essential terms of the settlement and notice, which STI shall release to the media within ten business days after the entry of the Order of Preliminary Approval;

h.      The Parties agree that Plaintiffs and their counsel shall review and have an opportunity to object to any voice prompt recordings or scripts prior to their use in this settlement.  STI shall provide Plaintiffs' Counsel with any proposed voice prompt recordings or scripts 20 business days prior to their implementation.  Plaintiffs' Counsel shall notify STI in writing within 5 business of their receipt of the scripts or recordings if they object to any aspect of the script or recording.  Plaintiffs' Counsel will be deemed to have consented to the proposed script or recording if Plaintiffs' Counsel fails to object within this period.  Should the parties not be able to resolve their differences within 10 business days of Plaintiffs' Counsel's written notification, the parties agree to submit the dispute to the Designated Arbitrator for resolution;

i.      The Parties further agree that a copy of Exhibit A to this Agreement will be made available, in both English and Spanish, to the public by accessing a discrete settlement website through a link on the Settlement Websites, or by calling a toll free number to be established by the claims administrator.

j.      The parties agree that the methods of notice set forth in this section constitute the best form of notice to the Settlement Class that is practicable under the circumstances.  STI shall pay all costs associated with disseminating, publishing and posting the Settlement Notice and all associated expenses, which shall be in addition to and not deducted from the pool of settlement funds described below or the amount of attorneys' fees and expenses described below.  The Parties and their respective counsel will refer inquiries from the press and all parties other than individual consumers to the joint press release and the settlement

documents. Although the Parties and their respective counsel may acknowledge their participation in the Lawsuit and the publicly available settlement, they will decline to comment further to the press or other parties other than individual customers. Nothing herein shall prevent the Parties and their respective counsel from communicating with Class Members about the settlement.

       5.     **Final Approval**

          a.     The Parties shall request that the Court hold a fairness hearing no later than 75 days from entry of the Order of Preliminary Approval. At the fairness hearing, the Parties shall jointly request that the Court enter an order and judgment pursuant to Fed. R. Civ. P. 54(a) in the form of Exhibit E to this Agreement (the "Final Order and Judgment"), which shall finally approve the terms of this Agreement, dismiss the Lawsuit with prejudice, discharge the Released Parties of and from all further liability to the New Jersey Plaintiffs and Settlement Class Members with respect to the Released Claims (but not as to any obligations created or owed pursuant to this Agreement), and permanently barring and enjoining the New Jersey Plaintiffs and Settlement Class Members from bringing, filing, commencing, prosecuting (or further prosecuting), maintaining, intervening in, participating in, assisting in any way, formally or informally, except as required by law, or receiving any benefits from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or cause of action in law or equity that asserts, arises from, concerns, or is in any way related to the Released Claims. The actual form of Final Judgment and Order entered by the Court may include additional provisions as to which the Parties may subsequently agree, or which the Court may direct, that are not inconsistent with any of the express terms or conditions of this Agreement.

b.      Following entry by the Court of the Final Order and Judgment, no default by any Person in the performance of any covenant or any obligation arising under this Agreement, or any order of judgment entered in connection therewith, shall affect the dismissal of the Lawsuit, the discharge and release of the Released Parties, or any other provision of this Agreement.  The above notwithstanding, nothing in this sub-section shall prevent a Party from seeking enforcement of or compliance with the terms of this Agreement, or the intervention of the Court to compel any such default to be cured.

c.      For two years following the date of this Agreement, STI shall provide Plaintiffs' Counsel with an annual report regarding its compliance with this Agreement, and with the Court retaining jurisdiction over any dispute arising over the accuracy of the report.

6.      **Settlement Consideration**.  In consideration for the dismissal of the Lawsuits with prejudice under the terms of this Agreement, STI shall, starting ten business days after the Settlement Effective Date and continuing until the end of the Claims Submission Period, provide a voice prompt on all current STI Calling Card access numbers and customer service numbers that offers each caller the opportunity to access, in both English and Spanish, the interactive voice response ("IVR") system for settlement claims (as described in sub-section d(l), below) by pressing a single button or combination of no more than two buttons on the telephone, or by separately dialing a direct toll-free telephone number at the caller's discretion, all at no additional cost to the caller;

Unless otherwise specifically modified below, STI shall, no later than 30 business days after the Settlement Effective Date, implement procedures to provide:

13

        a.       Prospective promotions in the form of free and/or discounted minutes to be given away to STI Calling Card consumers, not to exceed a total of $1,000,000 for STI Calling Card consumers;

        b.       Refunds not to exceed a total of $7,4200,000 (the "Fund") for Settlement Class Members, who purchased one or more STI Calling Cards before the date of entry of the Order of Preliminary Approval ("Claimant I"), to be distributed as follows:

        (1)       <u>Claimants With Personal Identification Numbers ("PINs")</u>

        A.       From ten business days after the Settlement Effective Date through the end of the Claims Submission Period, any Claimant may call an STI IVR telephone system or access the STI Settlement Website and enter a Personal Identification Number ("PIN") from an STI Calling Card that Claimant purchased before the date of the entry of the Order of Preliminary Approval.  Claimant may be required to provide his or her name and address, telephone number, and the name of the STI Calling Card associated with the PIN (the "Claim"). STI will then (during the course of a single IVR telephone call or website visit, if feasible) provide Claimant with payment of its Claim in the form of a Refund PIN, described below, based on confirmation of an eligible PIN and as long as funds remain in the Fund.  If Claimants call into the STI IVR telephone system before the Settlement Effective Date, they will be advised to call back, in accordance with sub-section 4(f) above.

        B.       In the event that STI cannot immediately determine the legitimacy of a PIN submitted, Claimant may be required to contact STI in the same manner (*i.e.*, via the IVR system or through the STI Settlement Website) a second time to obtain payment of his or her claim.  STI will use its Best Efforts to make available certain personnel (and will instruct its customer service staff to refer any and all inquiries to such personnel), who will be

advised of the claims submission process and who will be made available to respond to questions regarding the process.

C.      If a Claimant submits more than 25 PINs, he or she must submit a sworn statement under penalty of perjury to "Claims Administrator: c/o STI Networks, Inc.," at an address to be set up by the claims administrator, declaring that he or she was the purchaser of such PINs, and must list the PINs in the declaration.  STI will issue a Refund PIN for each eligible PIN listed in the declaration.

D.      A Claimant who submits a claim in the manner described in this subsection may not submit or receive a Refund PIN for more than 250 PINs.

(2)      Claimants Without PINs

A.      In the event that a Claimant does not have a PIN from an eligible STI Calling Card that Claimant purchased before the date of the entry of the Order of Preliminary Approval, Claimant may nonetheless submit a claim by mailing a sworn statement under penalty of perjury to "Claims Administrator: c/o STI," at an address to be set up by the claims administrator, declaring that he or she was the purchaser of an eligible STI Calling Card, and setting forth the following: the Claimant's name and address, and telephone number; the name of STI Calling Card purchased; the name of the retailer and location at which it was purchased; the month and year in which it was purchased;  and the phone number(s) that were called by the Claimant when he or she used the card.  The affidavit must also provide a valid address to which STI will mail the Refund PIN within 45 days of receipt of the claim, subject to its independent confirmation of the sworn statement as described below and as long as funds remain in the Fund.

B.      STI reserves the right to confirm the veracity of any sworn statements or portions thereof that are submitted in the manner described in the prior paragraph. Such confirmation may include, but is not limited to, confirmation that the destination phone number was accessed by a customer using the specific type of STI Calling Card described in an affidavit.  Should STI determine that the recitations set forth in any affidavit submitted pursuant to this subsection are false or misleading, STI shall notify the Claimant of the discrepancies and reserves the right to refuse to issue a Refund PIN to Claimant for any  Claims submitted.

C.      A Claimant who submits a Claim in the manner described in this subsection may not submit or receive a Refund PIN for more than 25 eligible STI Calling Cards.

(3)      STI will pay each eligible Claim by providing Claimant with a PIN with a total value of $0.50 for domestic calls at the rate of $0.10 per minute and international calls to countries set forth in Exhibit F below at $0.25 per minute ("Refund PIN") for each eligible PIN submitted.  The Refund PIN cannot be used for international calls to destinations not identified in Exhibit F.

(4)      The Refund PIN cannot be used for calls placed from a payphone, and STI will so advise each Refund PIN recipient at the time the Refund PIN is issued, either by an announcement on the IVR system or a message on the STI Settlement Website.

(5)      STI will pay each eligible claim by a current or prior STI rechargeable calling card customer by providing Claimant with a Refund PIN for every $5.00 worth of calling time that was loaded by a Claimant onto an STI rechargeable calling card.

(6)      Refund PINs shall be valid for a period of 12 months from the date of issuance.

(7)     Refund PINs shall be freely transferable.

(8)     Each PIN from an STI Calling Card may only be submitted once, and STI shall not be obligated to provide more than one Refund PIN per submitted and confirmed PIN from an STI Calling Card.

c.     All costs and expenses of class notice and administration of claims shall be paid or borne by STI.

d.     Any Settlement Class Member or Person who is initially denied a Refund PIN ("Denied Claim") may appeal such a denial to the Designated Arbitrator.  Any appeal of a Denied Claim must state in writing the basis for the appeal, and shall be submitted to the Designated Arbitrator within 60 days of notification of the Denied Claim.  The Designated Arbitrator shall direct copies of all appeals to the Parties (for Plaintiffs, through Plaintiffs' Counsel).  The Parties may submit to the Designated Arbitrator a written response to the appeal. Such response shall be submitted to the Designated Arbitrator within 30 business days of the Parties' receipt of the appeal.  The Designated Arbitrator shall issue a written decision within 90 days of receipt of the appeal.  In the event that a Settlement Class Member or Person disagrees with the Designated Arbitrator's decision, the Settlement Class Member or Person shall have 90 days to appeal that decision to the Court.  All attorneys' fees, costs, and/or other expenses incurred by either Party during this process shall be borne by the Parties individually and no party shall seek to recover such costs from the other for its own efforts.

e.     The Released Parties shall only be obligated to pay claims pursuant to the terms of and in the amounts stated in this Agreement.

f.     In addition to the foregoing, STI agrees to the entry of an injunction that for a period of three years from the date hereof, it shall:

17

i.      Comply with the Consumer Fraud Act and regulations, as well as any other state and/or federal laws, rules and regulations which are applicable to all future sales and marketing of pre-paid calling cards by or on behalf of the company;

ii.     Ensure that all minutes or rates, or both, advertised on any pre-paid calling card, any point of sale material relating to that card or otherwise relating to any pre-paid calling service, shall be available to the consumer and there shall be no limitations on the period of time for which the advertised minutes, or rates, or both, will be available to the consumer unless those limitations are clearly and conspicuously disclosed in the same location on the card, advertising or point of sale material where the minutes or rates, or both are advertised;

iii.    Ensure that all service minutes promoted, advertised or disclosed on any voice prompts provided at the time the consumer places a call with company's pre-paid calling cards shall be immediately available to the consumer on that call. The consumer shall not be charged for any busy signal or unanswered call;

iv.     Not charge, apply or deduct from a pre-paid calling card's balance any fees, taxes, surcharges or other amounts for use of the card except:

    1.      the rate per minute for the particular destination called;

    2.      any permitted fees; and

    3.      any rate per minute, fee or charge for use of the card, or permitted for calls to or from international telephone numbers, international cellular and international wireless telephone numbers;

v.      Clearly and conspicuously disclose all permitted fees, as well as any other fees and surcharges, on its pre-paid calling cards and/or packaging materials and on its advertisements;

vi.     Clearly and conspicuously disclose the company's policy of rounding off time for billing purposes on its pre-paid calling cards and packaging materials;

vii.    Make available to consumers a toll-free customer service telephone number to address any post-order inquiries concerning all pre-paid calling cards, and clearly and conspicuously disclose to consumers the telephone number in all materials accompanying the pre-paid calling cards;

viii.   make available through the toll-free customer service telephone number all information concerning any charges and deductions and its and its policy of rounding off time for billing purposes

18

7.      **Best Efforts of Parties**.  The Parties agree to undertake their Best Efforts to effectuate the Settlement described in this Agreement.  The Parties shall encourage the Court to approve the Agreement, and shall not encourage Persons included within the Settlement Class or attorneys representing such Persons to object to the Court's approval of the Agreement.  The Parties further represent, agree and acknowledge that the Settlement is a fair resolution of these claims for the Parties and the Settlement Class Members.  Neither the Parties nor their respective counsel shall make any statements suggesting the contrary, either before or after the Court's approval of the Settlement and this Agreement.

8.      **Objections to Settlement**.  Any Settlement Class Member may object to the fairness, reasonableness or adequacy of the proposed settlement.  Each Settlement Class Member who wishes to object to any term of this Agreement must do so in writing by filing a written objection with the Clerk of the Court and mailing it to the Parties' respective counsel.  Any such objection must be filed with the Clerk of the Court and received by the Parties' respective counsel no later than 30 days prior to the date for the fairness hearing.  Any such objection must (a) include a list of all available PINs and names of STI Calling Cards that were purchased by the Settlement Class Member and the approximate total dollar amount of such purchase(s), (b) attach copies of any materials that will be submitted to the Court or presented at the fairness hearing, (c) be signed by the Settlement Class Member, and (d) clearly state in detail (i) the legal and factual ground(s) for the objection, (ii) the Settlement Class Member's, name, address and, if available, telephone number, and (iii) if represented by counsel, such counsel's name, address and telephone number.  Any objection that fails to satisfy the requirements of this section, or that is not properly and timely submitted, shall be deemed ineffective, will be disregarded by the

Court, and will be deemed to have been waived, and the Settlement Class Member asserting such objection shall be bound by the final determination of the Court.

9.      **Requests to Appear at Fairness Hearing**.  Settlement Class Members or their counsel who wish to appear at the fairness hearing must make such request by notifying the Court and the Parties' respective counsel in writing.  Any such request must be filed with the Clerk of the Court and received by the Parties' respective counsel no later than 30 days before the date of the fairness hearing, and must state the name, address, and, if available, telephone number of the Settlement Class Member, as well as the name, address, and telephone number of the person who will appear on his or her behalf.  Any such request must further include (a) a list of all available PINs and names of STI Calling Cards that were purchased by the Settlement Class Member, the date(s) or approximate date(s) of the Settlement Class Member's purchase(s) of STI Calling Card(s), the name(s) and address(es) of the retailer(s) from which such card(s) were purchased, and the approximate total dollar amount of such purchase(s), (b) the Settlement Class Members' signature, and (c) a detailed statement of the ground(s) for objection that the Settlement Class Member intends to raise at the fairness hearing.  Any request for appearance that fails to satisfy the requirements of this section, or that has not been properly or timely submitted, shall be deemed ineffective, shall not be considered by the Court, and shall constitute a waiver of such Settlement Class Member's rights to appear and to comment on the settlement at the fairness hearing.

10.     **Requests for Exclusion (Opt Out) from Settlement Class Membership**.  Any Person included within the Settlement Class who wishes to be excluded from membership in the Settlement Class must do so in writing by mailing a written request for exclusion from the Settlement to the Parties' respective counsel.  Such request must be postmarked no later than 21

days before the date for the fairness hearing.  The request must (a) be signed by the Settlement Class Member, (b) include a list of all available PINs and names of STI Calling Cards that were purchased by the Person, the date(s) or approximate date(s) of the Person's purchase(s) of STI Calling Card(s), the name(s) and address(es) of the retailer(s) from which such card(s) were purchased, the approximate total dollar amount of such purchase(s), (c) clearly express the Person's desire to be excluded (or to "opt out") from the Settlement Class, and (d) include the Settlement Class Member's name, address and, if available, telephone number; and, if represented by counsel, counsel's name, address and telephone number.  Any Person within the Settlement Class who wishes to be excluded from the Settlement Class can only opt out for himself or herself and cannot opt out for any other Person, nor can any Person within the Settlement Class authorize any other Person to opt out on his or her behalf, except for minors. Any request for exclusion that fails to satisfy the requirements of this section, or that has not been timely sent, may be deemed ineffective, and any Person included within the Settlement Class who does not properly and timely submit a request for exclusion shall be deemed to have waived all rights to opt out and shall be deemed a Settlement Class Member for all purposes under this Agreement.  In the event that Persons who would otherwise be Settlement Class Members have properly submitted timely requests for exclusions from the Settlement Class and such Persons in the aggregate have claims greater than 5% of the total settlement pool as described in Paragraph 6(d), STI shall have the option to withdraw from the Settlement and to rescind this Agreement by providing written notice of such intent to withdraw to the Court and to Plaintiffs (through Plaintiffs' Counsel) no later than 10 business days before the fairness hearing. In such event, STI shall cease to be a Party to this Agreement and to the Settlement, and, in the

event of such withdrawal, all of the Parties' respective obligations under the Settlement and this Agreement will terminate.

11.     **Failure of Court to Approve this Settlement Agreement**.  If (i) preliminary or final approval of this Agreement and the Settlement is not obtained from the Court, (ii) the Final Order and Judgment in the form attached as Exhibit E to this Agreement is materially modified by the Court, and any of the Parties objects to such modification, (iii) any objector appeals from the Court's entry of the Final Order and Judgment and such order is reversed in whole or in part by a final decision of an appellate court (in the event of a partial reversal, the Parties shall have the right to elect to be bound by this Agreement as modified by the appellate court), or (iv) STI elects to terminate and rescind this Agreement pursuant to the terms of section 10 above, and (v) STI or Plaintiffs provides written notice to the other Party within 10 business days of one of the occurrences described in this sub-sections (i) through (iv) above, then this Agreement shall be null and void, shall have no further force and effect with respect to any Party, and shall not be offered in evidence or used in the Lawsuit (or in any other matter) for any purpose, including that relating to the existence, certification or maintenance of any purported class of plaintiffs.  In such event, this Agreement and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Released Parties, Plaintiffs or the Settlement Class Members, shall not be deemed or construed to be an admission or confession by any Party of any fact, matter or proposition of law, and shall not be used in any matter for any purpose, and all Parties shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.  In such event, any Party may move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement, and no Party shall object thereto.  To the extent feasible, the Parties shall be returned to their respective

positions in the Lawsuit as of the date hereof.  The Lawsuit shall then proceed in all material respects as if this Agreement and any related orders had never been executed.  A modification or reversal on appeal of the resolution of any dispute relating to the claim of anyone claiming to be a member of the Settlement Class shall not be deemed a material modification of this Agreement.

12.   **Attorneys' Fees and Expenses.**

a.   STI agrees not to oppose an award by the Court of reasonable attorneys' fees, including expenses through the entry of the Final Order and Judgment, to Plaintiffs' Counsel on behalf of Plaintiffs' Counsel not to exceed $2,050,000.  Plaintiffs' Counsel agrees that they will not seek attorneys' fees and expenses that exceed $2,050,000.  The reasonable attorneys' fees and expenses, as awarded by the Court, shall be paid to Plaintiffs' Counsel. Plaintiffs' Counsel shall allocate attorneys' fees and expenses among themselves in a manner that, in their sole discretion, reflects the respective contributions of Plaintiffs' Counsel to the results achieved in this matter.  ~~STI further agrees not to oppose Plaintiffs' Counsel's decision to allocate a reasonable portion of their attorneys' fees to any or all of the Plaintiffs as incentive awards of up to $5,000 each, subject to Court approval.~~ The Parties' negotiation of and agreement to the foregoing attorney's fees and costs and incentive awards did not occur until after the substantive terms of the Agreement had been negotiated and agreed.  <u>STI further agrees not to oppose an application by Plaintiffs' Counsel for incentive awards to any or all of the Plaintiffs of up to $5,000 each, subject to Court approval, separate and apart from whatever attorney's fees the Court may award.</u>

b.   If and to the extent that counsel other than Plaintiffs' Counsel identified in sub-section 12(a) above apply for an award of attorneys' fees and expenses, STI reserves the right to oppose all such applications on any grounds, including, but not limited to, that the

Released Parties have not agreed to pay such fees and expenses and that they are unreasonable or duplicative.

        c.     All applications for an award of attorneys' fees and expenses and incentive awards shall be made no later than ten business days before the fairness hearing.  Such applications will be heard at the time of the fairness hearing or as soon thereafter as may be determined by the Court.

        d.     All fees and expenses shall be paid to Plaintiffs' Counsel as awarded by the Court within ten days after the Final Order and Judgment.  Notwithstanding the foregoing, if for any reason the Court fails to grant final approval to this Agreement; the Final Order and Judgment is reversed or rendered void as a result of an appeal; or this Agreement is voided, rescinded, or terminated for any other reason, then Plaintiff's Counsel shall return to STI all fees, costs and other payments received by Class Counsel under this Agreement.  In such event, the following Persons shall be jointly and severally liable for such payments to the extent received by them: (a) Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein; (b) Freed & Weiss LLC; (c) Nagel Rice; and (d) any attorneys of such firms in their individual capacity who receive a share of payments directly from the Common Fund made pursuant to this Agreement.  To effectuate this provision, each individual attorney or firm who receives a share of payments under this provision shall execute a guarantee of repayment in the form attached hereto as Exhibit G, and shall be obligated to indemnify and defend STI in the event of any dispute pertaining to payment of the fees and costs to Plaintiffs' Counsel.  If this Agreement is terminated pursuant to any of its provisions or for any other reason, STI's obligations under this section, including the obligation to pay such fees, shall likewise be terminated.  All monies paid

pursuant to this provision shall be made to Carella, Byrne who shall be solely responsible, in its sole discretion, for allocating the Court's attorney fee award to Plaintiffs' Counsel.

e.     After the Settlement Effective Date and after receipt by Plaintiffs' Counsel of payment by STI of attorneys' fees and expenses as awarded by the Court, Plaintiffs' Counsel shall either destroy or return to STI all copies of discovery provided by STI within 15 business days, and shall provide a certification to STI that such has been done.

f.     Payment by STI of any attorneys' fee award pursuant to this section, as approved by the Court, will completely satisfy any and all obligations on the part of the Released Parties to pay attorneys' fees, costs and expenses under this Agreement. The Released Parties shall have no responsibility or liability whatsoever regarding the payment of attorneys' fees, costs and expenses other than as set forth in this section.

g.     The application for an award of attorneys' fees and expenses is to be considered separate from the approval of this Settlement, and any challenges thereto shall not terminate or delay the Settlement.

13.     **Release, Waiver and Covenant Not to Sue**.

a.     Effective as of the Settlement Effective Date, and in consideration of this Agreement and the benefits extended to the Settlement Class, Plaintiffs, on behalf of themselves and the Settlement Class Members, and each Settlement Class Member, on behalf of himself or herself and his or her respective successors, assigns, past, present, and future parents, subsidiaries, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions, groups, directors, officers, shareholders, employees, agents, representatives, servants, partners, executors, administrators, assigns, predecessors, successors, descendants, dependents, and heirs, fully release and forever discharge the Released Parties from the Released Claims.

b.      Plaintiffs, on behalf of themselves and the Settlement Class Members, fully understand that if any fact relating to any matter covered by this Agreement is later found to be other than or different from the facts now believed by Plaintiffs to be true, Plaintiffs, on behalf of themselves and the Settlement Class Members, expressly accept and assume the risk of such possible differences in fact and agree and acknowledge that this Agreement shall nevertheless remain fully binding and effective.

c.      Plaintiffs expressly understand and acknowledge that certain state statutes and principles of common law provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his, her, or its favor.  For example, Cal. Civ. Code Section 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HER OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

To the extent that any Settlement Class Member may argue that such statutes or principles of common law are applicable here, Plaintiffs, on behalf of themselves and the Settlement Class Members, agree that any such statutes, principles of common law or other sources of legal authority of any and all jurisdictions that may be applicable are hereby knowingly and voluntarily waived and relinquished by the Settlement Class Members, and further agree and acknowledge that this is an essential term of this Agreement.  The Settlement Class Members understand the statutory language of Section 1542 of the California Civil Code and nevertheless elect to Release the Released Parties from the Released Claims, whether known or unknown, and specifically waive any rights that each may have under said Civil Code Section.  The Settlement Class Members fully understand that if the facts with respect to this Agreement are found

hereafter to be other than or different from the facts now believed to be true, each expressly accepts and assumes the risk of such possible difference in fact and agrees that this Agreement shall be and remain effective, notwithstanding any such difference.  The Settlement Class Members declare that prior to and in connection with the execution of this Agreement, they have been apprised of sufficient relevant data from sources selected by them so as to exercise their judgment intelligently in deciding whether to execute this document and further declare that their decision is not predicated on or influenced by any declarations or representations of any other party.  The Settlement Class Members state that this Agreement is executed voluntarily by them with full knowledge of its significance and legal effect.

        d.     Upon the Settlement Effective Date, Plaintiffs shall have, and each and every Settlement Class Member shall be deemed to have, on behalf of the Settlement Class Member and the Settlement Class Member's respective successors assigns, past, present, and future parents, subsidiaries, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions, groups, directors, officers, shareholders, employees, agents, representatives, servants, partners, executors, administrators, assigns, predecessors, successors, descendants, dependents, and heirs, covenanted and agreed to:

        (1)     forever refrain from instituting, maintaining, or proceeding in any action against the Released Parties with respect to any Released Claims;

        (2)     release and forever discharge the Released Parties from each and every such Released Claim; and

        (3)     indemnify and hold harmless the Released Parties from all liability and expenses (including attorneys' fees) incurred by the Released Parties as the result of a breach of this covenant-not-to-sue by a Settlement Class Member.  Liability for this indemnification

shall be limited solely to the Settlement Class Member(s) responsible for breaching the covenant-not-to-sue.

    e. This Agreement may be pleaded by any of the Released Parties as a full and complete defense to, and may be used as the basis for a temporary restraining order or preliminary or permanent injunction against, any action, suit or other proceeding, which has been or may be instituted, prosecuted, continued to be prosecuted, or attempted, asserting any claim released by this Agreement.

   14. **Entire Agreement**.   This Agreement shall constitute the entire agreement between STI and Plaintiffs, on behalf of themselves and the Settlement Class, and supersedes and replaces any prior agreements and understandings, whether oral or written, between and among them, with respect to such matters.  This Agreement shall not be subject to any change, modification, amendment, or addition, without the express written consent of Plaintiffs and STI, and may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approved by the Court.

   15. **Binding Agreement**.  This Agreement shall benefit and bind the Parties, as well as their representatives, heirs and successors.  If for any reason any provision of this Agreement other than sections 6 or 13 shall be determined to be invalid or inoperative, the validity and effect of the other provisions shall not be affected thereby.

   16. **Continuing Jurisdiction**.   The Court shall retain continuing and exclusive jurisdiction over the Parties, including all Settlement Class Members, over the administration and enforcement of the Settlement and this Agreement, and over the distribution of benefits to the Settlement Class.  The Court also shall retain continuing and exclusive jurisdiction in connection with the injunction set forth in section 5(a) above.  The Court also shall retain continuing and

exclusive jurisdiction in connection with any Person included within the Settlement Class who wishes to opt out, as set forth in section 10 above.  Any disputes or controversies arising with respect to the interpretation, enforcement or implementation of the settlement or this Agreement must be submitted by formal and proper motion to the Court.

17.    **No Assignment**.  The Parties each represent and warrant that they have not assigned, transferred or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement.

18.    **Choice of Law**.  The validity, construction, interpretation, performance, and enforcement of this Agreement shall be governed by the internal, substantive laws of New Jersey without giving effect to New Jersey choice of law principles.

19.    **Counterparts**.  This Agreement may be executed in one or more counterparts, either manually or by telecopy.  All executed counterparts, and each of them, shall be deemed to be one and the same original instrument.  This Agreement shall be deemed executed as of August       , 2009.  The Parties shall exchange among themselves original, signed counterparts, and a complete set of such counterparts shall be filed with the Court as an Exhibit to the Motion for Preliminary Approval.

20.    **Advice of Counsel**.  Each of the Parties has had the benefit of the advice of counsel in the negotiation, drafting and execution of this Agreement, and the language in all parts of this Agreement is the product of the efforts of such counsel.  Accordingly, neither this entire Agreement nor any specific provision within the Agreement, shall be deemed to have been proposed or drafted by any Party or construed against any Party on that alleged basis.  This Agreement shall be construed as a whole, according to its plain meaning.

21. **CAFA Notice.**   The Parties agree that STI shall serve notice of this settlement (via Federal Express or United Parcel Service) that meets the requirements of  28 U.S.C. § 1715, on the appropriate federal and state officials not later than 10 business days after the filing of this Agreement with the Court.

22. **Authority**.   The Parties each represent and warrant that they have authority to enter into this Agreement, subject to certification of the Settlement Class and approval of this Agreement by the Court.

23. **No Party is Drafter.**   None of the Parties to this Agreement shall be considered to be the primary drafter of this Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

24. **Severability.**   In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision.

25. **Notification**.   Except as otherwise described in the Settlement Notice attached as Exhibit C to this Agreement, all notices and other communications referenced in this Agreement shall be in writing and shall be served by overnight mail or by registered or certified mail, return receipt requested, addressed to the Parties' counsel at their respective addresses as set forth below:

Notices to Plaintiffs or the Settlement Class Members

James E. Cecchi
Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
5 Becker Farm Road
Roseland, New Jersey 07068

Paul M. Weiss
Freed & Weiss LLC
111 West Washington Street, Suite 1331

Chicago, Illinois 60602

Bruce H. Nagel, Esq
Nagel Rice, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068

Notices to STI

Edward T. Kole
Wilentz Goldman & Spitzer
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095

John R. Goldman
Herrick, Feinstein
One Gateway Center
Newark, New Jersey  07102

26.     **Time for Compliance**.  If the date for performance of any act required by or under this Agreement to be performed on a particular day or within a specified period of time falls on a Saturday, Sunday or legal or Court holiday, such act may be performed upon the next business day, with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement

IN WITNESS WHEREOF,

**STI PREPAID L.L.C.**,

_____
By:
Title:
Dated: August ___ , 2009

**STI PHONECARD, INC.**,

_____
By:

31

Title:
Dated: August ___ , 2009

**TELCO GROUP, INC.,**

_____

By:
Title:
Dated: August ___ , 2009

**VOIP ENTERPRISES, INC**

_____

By:
Title:
Dated: August ___ , 2009

**ORLANDO S. RAMIREZ**
*Class Representative*

_____

By:     Orlando S. Ramirez
Dated: August ___ , 2009

**ALBERTO TORRES-HERNANDEZ**
*Class Representative*

_____

By:     Alberto Torres-Hernandez
Dated: August ___ , 2009

**CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN**
*Plaintiffs' Counsel*

_____

By:     James E. Cecchi
Dated: August ___ , 2009

**FREED & WEISS, LLC**
*Plaintiffs' Counsel*

_____

By:    Paul M. Weiss
Dated:  August ___ , 2009

**NAGEL RICE**
*Plaintiffs' Counsel*

_____

By:    Bruce T. Nagel
Dated:  August ___ , 2009