HERRICK

NEW YORK
NEWARK
PRINCETON

JOHN R. GOLDMAN
PARTNER
Direct Tel: 973.274.2000
Direct Fax: 973.274.2500

Email: jgoldman@herrick.com

January 19, 2010

VIA ECF AND BY FACSIMILE

The Honorable Madeline Cox Arleo, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: Ramirez v. STi Prepaid L.L.C.

Dear Judge Arleo:

At Your Honor's direction and in advance of the January 20, 2010 settlement conference, Defendants jointly submit this letter in opposition to Plaintiffs' "Motion to Enforce and for Preliminary Approval of Class Settlement" [Docket Entry No. 63]. Specifically, this letter responds to the portion of Plaintiffs' application by which they seek an order enforcing a purported settlement, the essential terms of which have not been agreed to by the parties. Defendants respectfully request that the Court deny Plaintiffs' motion, or, in the alternative, permit Defendants to file formal opposition to the motion, including affidavits and supporting documents.

**The Facts**

No enforceable settlement agreement has been reached between the parties in this action. Indeed, the parties never even negotiated, much less agreed upon, numerous essential settlement terms. Although Plaintiffs and Defendants reached a tentative understanding in July 2009 regarding the amount of refund PINs and discounts to be offered to members of the proposed Settlement Class and the amount of attorneys' fees that would be paid to interim class counsel, this tentative understanding did not include any discussion or agreement concerning the mechanisms for providing members of the proposed Settlement Class with refund PINs and discounts, the manner in which class notice would be provided to putative class members or the nature and duration of a proposed injunction. Instead, the parties contemplated that these essential terms would be negotiated and agreed upon through continued discussion and would be memorialized in a formal settlement agreement. During the subsequent negotiations, which were initially delayed by a personal matter and then by events occurring in other calling card cases brought by Plaintiffs' counsel, Defendants repeatedly made clear to Plaintiffs that Defendants had significant comments and suggested revisions to the material terms proposed by Plaintiffs -- some for the first time -- in their draft settlement agreement.

Plaintiffs' attempt to gloss over this fatal defect in their position by contending that this settlement is identical to those in their Locus and Total Call cases. Plaintiffs' position, however, is simply not true. In fact, that there is no enforceable agreement here is further evidenced by the circumstances surrounding the attempts to obtain approval of the settlement in Coppolino et al. v. Total Call Intl., Civil Action No. 08-0539, a substantially similar prepaid calling card class action brought by Plaintiffs' counsel. In Total Call, prior to the final approval hearing, 24 state attorneys general filed an objection to the proposed settlement agreement. (Class counsel in Total Call are also class counsel in Ramirez.) The objections of the various attorneys general, which were later echoed and modified by Judge Hochberg, led to major revisions to the value of the monetary consideration as well as the mechanisms for providing refunds and discounts to members of the settlement class – the latter issue being one that was never negotiated or even discussed in this case. Significant changes were made to the Total Call settlement, and it was finally approved by Judge Hochberg on December 29, 2009.

The settlement here was further complicated by a decision issued in the Eastern District of New York in a nearly identical prepaid calling card class action brought by Plaintiffs' counsel on behalf of the same named plaintiff against Dollar Phone Corporation, captioned Ramirez v. Dollar Phone Corp., et al., Civil Action No. 09-2290, in which the court dismissed the putative class action for lack of subject matter jurisdiction. Dollar Phone and our case are substantively identical actions, meaning that the Defendants here have equally significant and legitimate concerns as to whether the Court even has subject matter jurisdiction to entertain a settlement.[1]

In light of the objections to the proposed Total Call settlement, it became apparent to Defendants that the proposed draft provided by Plaintiffs – which was already unsatisfactory to the Defendants – would be objected to by numerous state attorneys general and, based on Judge Hochberg's decision, might also have been objectionable to this Court. Thus, in the wake of the objections by the attorneys general, as well as the Dollar Phone decision, counsel for Defendants repeatedly advised Plaintiffs' counsel (on November 12, November 23, and December 14, 2009) that they had serious concerns regarding the draft proposed settlement agreement. Plaintiffs' counsel agreed, conceding that revisions would have to be made to the draft proposed settlement agreement to comport with the Total Call settlement and any objections that might have been raised by attorneys general. In any event, neither the terms originally provided by Plaintiffs nor those resulting from the objections raised by the attorneys general were acceptable to the Defendants. Thus, there simply is no agreement here.

---

1 It is further worth noting that Plaintiffs elected not to appeal from the trial court's dismissal of the Dollar Phone action.

**The Law**

State law governs the enforcement of settlement agreements in federal court. See Excelsior Ins. Co. v. Pennsbury Pain Center, 975 F.Supp. 342, 349 (D.N.J. 1996). Where parties agree to settle an action, a settlement agreement is a contract which shall be honored and enforced by the court. See Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974). Under New Jersey law, "a contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms." United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997). A settlement should not be enforced "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." Kupper v. Barger, 33 N.J. Super. 491, 494 (App. Div. 1955). In short, there must be mutual assent to all of the essential terms of a proposed settlement agreement for it to be enforced. See Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 126 (App. Div. 2002). In order to determine whether there was a meeting of the minds as to the essential elements of the proposed settlement, the court should consider the nature of the dispute and of the settlement sought to be enforced. See Kupper, 33 N.J. Super. at 494-95 (refusing to enforce a proposed settlement after "thoughtfully examin[ing] the course of the proceedings" and concluding that the proposed settlement "constituted the vine but not all of the branches, and that it was therefore not sufficiently complete to warrant [enforcement]...under the attribution of the mutual consent of the parties.").

This is, after all, a putative class action brought by a class of purchasers of prepaid calling cards alleging that Defendants failed to deliver minutes promised and failed to disclose charges and fees.[2] Plaintiffs admit that proposed members of the Class suffered only "small damage amounts per class member[.]" (Plaintiff's First Amended Complaint ¶ 48; see also Pl Br. at 21 (each class member's claims are "of such a relatively low dollar value")). While the gross amounts of refunds and discounts and the payment of attorneys' fees were the subject of spirited negotiations between the parties, in the context of a consumer class action of this nature, these issues are not the only essential elements of a proposed settlement agreement. Devising an efficient and effective method for providing discounts and refund PINs to class members is clearly an essential element of any proposed settlement agreement and one that must be thoughtfully negotiated between the parties.

---

[2] Plaintiffs cite a number of cases for the proposition that the purported settlement agreement contained all of the essential terms. Those cases are inapposite because, for one thing, none of the cases involve a consumer class action, the settlement of which is governed by Federal Rule of Civil Procedure 23.

The significance of the protocol for refund PINs and discounts was established in Total Call. During the course of settlement negotiations, 24 attorneys general objected to the proposed settlement agreement due to the proposed mechanisms for providing refunds and discounts to proposed members of the settlement class. Judge Hochberg subsequently intervened in the Total Call settlement negotiations to require that the parties substantially modify the methods for providing discounts and refunds to members of the Total Call settlement class. This clearly evidences that the proposed mechanism by which members of a settlement class obtain refund PINs and discounts is a material term to any class settlement. Therefore, the parties failure to agree (or even to discuss) the mechanisms for providing discounts and refunds to members of the proposed Settlement Class in this case is fatal to Plaintiffs' claim that an enforceable settlement agreement was reached. See Krajewski v. Urgo, 2007 WL 1610151, at *4 (N.J. Super. App. Div. June 6, 2007) (reversing trial court's grant of motion to enforce settlement where there was no agreement as to an essential component of the settlement).

Class notice and injunctive relief are also essential elements of the proposed settlement agreement and issues which should be the subject of negotiation and mutual assent. For a settlement class to be certified, "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The goal of the class notice requirement of Rule 23 is to "inform class members of the existence of the pending litigation and provide them with the information needed to decide, intelligently, whether to stay in or opt out of class." In re Diet Drugs Prods. Liab. Litig., 385 F.3d 386, 395 (3d Cir. 2004) (citation omitted). Plaintiffs spend more than two pages of their brief asserting that the class notice they have unilaterally devised here is "the best notice practicable under the circumstances[.]" (See Pl. Br. 14-16). Yet, the class notice language was never the subject of negotiation between the parties. Similarly, while the parties agreed that an injunction would be part of a final settlement agreement, there was never a discussion regarding the nature or duration of the injunction. Where, as here, certification and final approval hinges, in part, upon the adequacy of the proposed class notice and the relief provided by the settlement, class notice and injunctive relief are clearly essential elements of any proposed settlement agreement. The fact that these essential elements were never agreed upon by the parties is further evidence that no enforceable agreement was reached to settle this action.

Indeed, none of the parties -- including Plaintiffs -- evinced a belief that a final settlement agreement had been reached. Plaintiffs' counsel openly admitted in November and December 2009 that the discount and refund PIN mechanisms in the draft proposed settlement agreement would have to be modified to comport with Total Call.[3] Plaintiffs' state of mind with respect to the draft proposed settlement agreement is further reflected by the fact that they repeatedly sought input from Defendants on material elements of the proposed settlement and by the fact that, on August 5, 2009, a mere nine days after Plaintiffs claim that a settlement agreement was reached before Your Honor, counsel for Plaintiffs sought to alter the tentative financial terms by requesting an additional $20,000 per plaintiff incentive fee from the Defendants. And, despite Plaintiffs' characterization of defense counsel's cover letters as evidence of an agreement, counsel for Defendants repeatedly advised Plaintiffs' counsel that they had significant modifications and revisions to the draft proposed agreement. In reality, the letters to the court in which counsel for the Defendants requests extensions of time are *prima facie* evidence that no agreement was reached and that additional time was needed for a meeting of the minds with respect to the essential elements of a settlement.

Plaintiffs wrongly assert that the parties reached an "agreement of all terms of the settlement" in July 2009. (Declaration of James E. Cecchi ¶ 6.) In doing so, Plaintiffs ignore the importance of the mechanisms for providing relief to the proposed Settlement Class of consumers and of class notice and injunctive relief. Plaintiffs suggest that the parties reached a settlement because a tentative understanding was reached on the gross amounts recoverable by Plaintiffs in terms of refund PINs, discounts and attorneys fees and because the language addressing other essential elements of the proposed settlement (language which was never negotiated, much less agreed upon by Defendants) is "substantially similar to [settlement agreements in] other calling card cases." (Id. ¶ 8.) As has already been established, in a consumer class action such as this, the gross amount of discounts and refunds and the amount of attorneys' fees are not the only essential terms of the proposed settlement. Moreover, Plaintiffs are simply wrong to claim that the Locus and Total Call settlements are the same or "substantially similar" with respect to the essential elements of class notice and the mechanisms for providing refunds and discounts. These agreements differ materially regarding how class notice is provided, which party bears the financial burden of providing notice, and with respect to how members of the respective classes can get refund PINs (in Locus, by phone; in Total Call, by mail). These issues simply cannot be addressed through boilerplate language. Rather, in past settlements, class notice, injunctions and the process for providing discounts and refunds clearly have been the subject of negotiation and agreement between the parties. That should not change.

---

[3] Now, in January 2010, Plaintiffs seek an order enforcing the draft proposed settlement agreement which was forwarded to Defendants on August 14, 2009, and which does not address the concerns raised in Total Call with respect to mechanisms for providing refunds and discounts.

Because the parties never agreed to all of the essential terms of the draft proposed settlement agreement, the Court should deny Plaintiffs' motion to enforce the draft proposed settlement agreement.

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: ______________________
John R. Goldman
Attorneys for The Telco Companies

cc: Edward T. Kole (by electronic mail)
James E. Cecchi (by electronic mail)
Paul M. Weiss (by electronic mail)
Bruce H. Nagel (by electronic mail)