# CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, P.C.

### COUNSELLORS AT LAW

CHARLES C. CARELLA
BRENDAN T. BYRNE
JOHN N. BAIN
PETER G. STEWART
ELLIOT M. OLSTEIN
ARTHUR T. VANDERBILT, II
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES D. CECCHI (1933-1995)

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
KENNETH L. WINTERS
JEFFREY A. COOPER
CARL R. WOODWARD, III
MELISSA E. FLAX
DENNIS F. GLEASON
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
KHOREN BANDAZIAN
LINDSEY H. TAYLOR

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

RICHARD K. MATANLE, II
FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER
WALTER G. LUGER
OF COUNSEL

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT°
MARC D. MICELI
RAYMOND E. STAUFFER°
JACOB A. KUBERT
STEPHEN R. DANEK
ERIC MAGNELLI
DONALD A. ECKLUND
VINCENZO M. MOGAVERO
°MEMBER N.Y. BAR ONLY

January 20, 2010

<u>VIA ECF and FACSIMILE</u>

Honorable Madeline Cox Arleo
United States Magistrate Judge
Martin Luther King Federal Building
50 Walnut Street
Newark, New Jersey 07102

> Re:   Torres-Hernandez, *et al.* v. STI Prepaid, *et al.*
>        Civil Action No. 08-1089 (SDW)

Dear Judge Arleo:

This firm, along with others, represent the Plaintiffs in the above-captioned matter.  This responds to Defendants' January 19, 2010 letter relating to the Settlement.

Defendants' contention that there was never an agreement as to the material terms of a settlement is contrary to the prior discussions of the parties, contrary to the record and contrary to their representations to the Court.  The material terms of the Settlement, which were agreed to in the mediation with Judge Hughes and reported to Your Honor, were:  1)  Defendants would provide $7.4 million in replacement PINs, worth 50¢ each, for use for 10¢ per minute for domestic calls and 25¢ per minute for international calls; 2)  $1 million worth of prospective discounts; and 3)  injunctive relief co-extensive with that which Defendants agreed with the State of New Jersey.  Your Honor further mediated the issue of attorney's fees, and the parties agreed upon an attorney fee award of up to $2,050,000, subject to Court approval.  At no time, prior to January 2010, did Defendants ever communicate that there were any material terms which had not been agreed to, or that the material terms were something different than what is stated above.

Defendants' contention that the parties did not agree upon the terms or length of the injunctive relief is simply false.  The parties agreed upon injunctive relief, on a nationwide basis, identical to that which Defendants had agreed with New Jersey.  That injunctive relief was for three years, which is what is provided for in the New Jersey injunction, and the language of the injunction contained in the draft Settlement Agreement was cut-and-pasted from a publicly available copy of STI's agreed injunction with the State. The remaining "open terms" in the

Honorable Madeline Cox Arleo
January 20, 2010
Page 2

Settlement, such as notice or how the replacement PINs are to be distributed to Class members, are not material terms, but, rather, are details as to how the material terms are to be implemented.

Defendants did advise that they had comments to the Settlement Agreement, which is normal on even the most simple legal document. Ordinarily, "having comments" means that the parties need to work on the wording of the document, which Plaintiffs are willing to do, not that the parties don't have a deal on the material terms. More importantly, to this day, Defendants have not provided a single substantive comment to the Plaintiffs. Further, the position that was communicated to Plaintiffs most recently was not that the Settlement Agreement somehow did not accurately memorialize what the parties had agreed to, but that Defendants were backing out of the Settlement. Even now, they do not state what it is that they believe that they agreed to or how the draft Settlement Agreement somehow inaccurately reflects the material terms of the deal. If there was some issue on those points, why did Defendants wait six months to raise them? Why did Defendants repeatedly advise the Court that the case had been settled, rather than saying that the parties were working on the terms of a deal?[1]

In addition, while the parties had discussions regarding the Settlement in light of the state attorneys general objections in *Coppolino v. Total Call*, Civil Action No. 08-539(FSH), at no time did Plaintiffs advise Defendants that we believed that *Total Call* undercut the validity of our deal. To the contrary, we told Defendants that we would either work on tweaking the Settlement or would present the Settlement to the Court "as is". It would be frivolous to suggest otherwise. Indeed, Defendants appear to take nonsensical position that the parties don't have a settlement because they didn't agree to change what they had previously agreed to. While Defendants express concern that the state attorneys general may again object and the Court may not approve the Settlement as a result, Plaintiffs believe that the *Total Call* settlement was fair, reasonable and equitable and should have and would have been approved "as is". The changes which were made in *Total Call* were simply to make it better than it was before.[2]

Defendants have also inaccurately described the changes which were made in the *Total Call* settlement. A chart, summarizing the changes, which was submitted to Judge Hochberg in *Total Call* is attached herewith. First, two of the most important revisions in the *Total Call* settlement do not require any change in the Settlement here. Among the state attorneys general

---

[1]     Defendants contend that the repeated extensions of time to answer are evidence that no agreement had been reached. That is not so. The extensions are evidential of exactly what is stated in Defendants' letters to the Court, that the case had been *settled*, pending the execution of formal documents and Court approval. If no settlement had been agreed to, as Defendants now claim, Plaintiffs would have had Defendants answer and proceeded with discovery.

[2]     If Defendants are truly concerned about approval of the Settlement, and have suggestions which they believe will increase the likelihood that the Settlement will be approved, Plaintiffs will certainly review and consider any such suggestions. However, Defendants cannot contrive a concern as to whether the Court may approve the Settlement to squirm out of what they previously agreed to and resume litigation of the case because they now believe they have a better chance of winning.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION

Honorable Madeline Cox Arleo
January 20, 2010
Page 3

objections were that Class members had to have their claim forms notarized, and that the injunctive relief was insufficiently specific. Here, Class members need only sign their claim forms under penalty of perjury, which was a change which had to be made in *Total Call*, and the more specific injunctive relief in *Total Call*, tracked the language of the New Jersey injunctive relief, which, again, Defendants have already agreed to. There were revisions in the value of the replacement PINs *to Class members*, but the revisions in the *Total Call* settlement did not require the defendant to pay any more than it had previously agreed to. The value of replacement PINs was increased from 50¢ each to $1.50 each, but the calling rates remained the same, so Total Call's exposure under the settlement did not increase one iota from what it had previously agreed to provide to Class members.

Further, due to the unique circumstances in *Total Call*, where Total Call was providing prospective discounts to California customers pursuant to a separate settlement with the State of California, no prospective discounts to customers were provided in the settlement here. By contrast, the Settlement in this case provides $1 million in prospective discounts to future STi customers. This provides a real economic benefit to Class members separate and apart from replacement PINs, which require Class members to submit claims form, which addresses another of the state attorneys general objections.

In short, Defendants contention that the parties never reached an agreement as to the material terms of a settlement is disingenuous. Their *post hoc* claim are an excuse, generated by buyer's remorse, to attempt to get out of a settlement in a case where Defendants now believe that their chances of litigation success are greater than before.  The record and the facts simply do not support their position, and second thoughts are not an excuse to get out of the deal Defendants previously agreed to. "If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand." *Pascarella v. Bruck*, 190 N.J.Super. 118, 126 (App.Div. 1983). "[S]econd thoughts are entitled to absolutely no weight as against our policy in favor of settlements." *Dept. of Public Advocate v. N.J. Board of Public Utilities*, 206 N.J.Super. 523, 530 (App.Div. 1985).   Indeed, Plaintiffs are convinced that if it becomes necessary to take discovery as to whether the parties, in fact, agreed to a settlement, Defendants' claims will prove false.

Thank you for the Court's continued attention to this matter.  We look forward to discussing these issues with Your Honor this afternoon.

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

JAMES E. CECCHI

cc:     All Counsel (via ECF)

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
A PROFESSIONAL CORPORATION