**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ORLANDO S. RAMIREZ and ALBERTO TORRES-HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br>v.<br><br>STI PREPAID L.L.C., STI PHONECARD, INC., TELCO GROUP, INC., VOIP ENTERPRISES, INC., and LEUCADIA NATIONAL CORP and ABC CORPS 1-25,<br><br><br>                              Defendants. | Civil Action No. 08-1089 (SDW) |

-------------------------------------------------------------------------------------------------------------

**BRIEF IN SUPPORT OF PARTIES' JOINT MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

-------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiff
ORLANDO S. RAMIREZ

Bruce H. Nagel
Elliot L. Pell
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Attorney for Plaintiff
ALBERTO TORRES-HERNANDEZ

**TABLE OF CONTENTS**

Table Of Authorities ...............................................................................................ii

Preliminary Statement...........................................................................................1

Statement Of Facts.................................................................................................3

      A.    Factual Background and Procedural History of This Action....................3

      B.    Reasons for the Settlement......................................................................4

      C.    The Settlement Terms .............................................................................5

Legal Argument

Point I

The Settlement Warrants Preliminary Approval....................................................7

A.    The Standards for Preliminary Approval .........................................................7

B.    The Proposed Method of Class Notice is Appropriate ....................................9

Point II

A Settlement Class Should Be Certified...............................................................12

      A.    Numerosity..............................................................................................13

      B.    Commonality............................................................................................13

      C.    Typicality .................................................................................................14

      D.    Adequacy of Representation ....................................................................15

      E.    Predominance of Common Questions and Superiority to Other Methods of Adjudication .........................................16

      F.    Notice to the Class Is Reasonable Under the Circumstances ...................17

Conclusion .........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc.* v. *Windsor,* 521 U.S. 591, 619 (1997)...................................................... 12, 16

*Baby Neal v. Casey,* 43 F.3d 48 (3d Cir. 1994) ........................................................................... 13

*Bradburn Parent Teacher Store, Inc. v. 3M,* 513 F.Supp.2d 322 (E.D.Pa. 2007)....................... 19

*Carlough v. Amchem Products,* 158 F.R.D. 314 (E.D.Pa. 1993) .................................................. 18

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................... 17

*Chiang v. Veneman*, 385 F.3d 256 (3d. Cir. 2004) ...................................................................... 13

*Eisenberg v. Gagnon,* 766 F.2d 710 (3d Cir. 1985)...................................................................... 16

*Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461 (E.D.Pa. 2000) ..................................................... 13

*Girsh* v. *Jepson,* 521 F.2d 153 (3d Cir. 1975) ............................................................................... 9

*Horton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825 (E.D.N.C. 1994) ......... 8

*Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992)............................................ 15

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ................................................. 9

*In re Bromine Antitrust Litig.*, 203 F.R.D. 403 (S.D.Ind. 2001)..................................................... 8

*In re Community Bank of N. Va.,* 418 F.3d 277 (3d Cir. 2005) .............................................. 12, 13

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)................................................................................................. 7, 8, 12

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*
148 F.3d 283 (3d Cir. 1998).................................................................... 12, 15, 16, 19

*In re Prudential Insurance Co. of America Sales Practices Litigation,*
177 F.R.D. 216 (D.N.J. 1997)............................................................................................... 18

*In re Prudential Sec. Inc. Limited Partnerships Litigation*, 163 F.R.D. 200 (S.D.N.Y. 1995) ...... 7

*Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982) ............................................................................... 15

*Stewart v. Abraham,* 275 F.3d 220 (3d. Cir. 2001)................................................................. 13, 14

*Weiss v Regal Collections*, 385 F.3d 337 (3d Cir. 2004)............................................................... 17

*Williams* v. *Vukovich,* 720 F.2d 909 (6th Cir. 1983) ..................................................................... 8

*Zimmer Paper Prods., Inc.* v. *Berger & Montague, P.C.,* 758 F.2d 86 (3d Cir. 1985) ............... 10

**Rules**

Fed.R.Civ.P. 23 ....................................................................................................................... passim

**Treatises**

Manual For Complex Litigation (Second), § 30.44 (1985) ...................................................... 8

2 A. Conte & H. Newberg, Newberg On Class Actions § 11.41 ....................................... 7, 19

38 J.W. Moore, Moore's Federal Practice (2d ed. 1996) ¶ 23.80[2.-1].................................. 8

Manuel for Complex Litigation (Third) § 30.41 (1995) ....................................................... 7

ii

**PRELIMINARY STATEMENT**

Plaintiffs Orlando Ramirez and Alberto Torres-Hernandez (together "Plaintiffs") and Defendants respectfully submit this brief in support of their joint motion for preliminary approval of a proposed class settlement (the "Settlement"), the terms of which are set forth in a Class Settlement Agreement and Release, dated July 12, 2010 (the "Agreement").   The Settlement will provide direct benefits to settlement class members worth up to $8.4 million and, if approved, would resolve all of Plaintiffs' claims against Defendants. The Settlement was reached after a thorough investigation by Plaintiffs' counsel and substantial negotiations between counsel for the parties with the assistance of the Court.

Defendants sells prepaid telephone calling cards - the product at issue in this action. The Settlement, among other things, requires Defendants to issue up to $7.4 million of refund personal identification numbers ("PINs") that eligible consumers of Defendants' calling cards can use to make domestic phone calls and phone calls to certain international locations.   In addition, Defendants have agreed to provide $1 million in prospective free or reduced-rate minutes for current calling customers.   The Settlement resulted from good-faith, arms-length negotiations among experienced counsel for the parties, and is an excellent compromise in light of the merits of plaintiffs' claims and Defendants' defenses, and of the factual and legal risks of continued litigation through trial and an almost-certain appeal.   The Settlement represents a highly favorable result for the putative class, and therefore meets the test for preliminary approval. A copy of the Agreement is attached as Ex. A hereto.

For the reasons set forth below, the parties therefore respectfully request that the Court enter an order (1) granting preliminary approval of the proposed Settlement; (2) conditionally certifying a class for purposes of settlement (the "Settlement Class"); (3) approving their

proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider their request for final approval of the Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses.

**STATEMENT OF FACTS**

**A.      Factual Background and Procedural History of This Action**

Plaintiffs brought this action individually and on behalf of "all persons who purchased prepaid calling cards which were produced, sold, or distributed by Defendants throughout the United States."  They allege that Defendants sell and market calling cards that advertise a certain amount of airtime minutes, but that do not actually deliver those minutes to the consumer. Plaintiff further claim that the value of Defendants' cards, *i.e.,* the minutes delivered by the cards, is reduced by charges and fees that Defendants imposes that are either not disclosed, or are inadequately disclosed, to consumers.  The class definition includes individuals from all 50 states, as Defendants' prepaid calling cards are sold throughout the United States.

In the Consolidated Amended Complaint[1] (the "Amended Complaint"), Plaintiffs allege that Defendants have employed unlawful, unfair and deceptive practices in the manner in which they market and sell their prepaid calling cards.  Plaintiffs further allege that Defendants market their cards primarily to low income and immigrant consumers who are particularly vulnerable to the alleged deceptive practices.  Plaintiffs claim that they have suffered a variety of injuries as a result of these alleged practices.  The Amended Complaint asserts four specific claims: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA"); (2) violation of "substantially similar consumer fraud statutes of certain States" (including Arizona,

---

[1]      *Torres-Hernandez v. STI Prepaid LLC, et al.*, Civil Action No. 08-1089 (SDW) (the "*Torres-Hernandez* Case") was the first case filed in this District.  *Ramirez v. STI Prepaid LLC, et al*, Civil Action No. 08-1735 (FSH) (the "*Ramirez* Case") was filed thereafter.  There was a previously filed case in the Eastern District of New York, *Adighibe, et al. v. Telco Group, et al.*, Case No. 07-civ-01206 (ILG) (the "*Adighibe* Case").  The *Torres-Hernandez* and *Ramirez* Cases were consolidated and the Consolidated Amended Class Action complaint was filed in the *Torres-Hernandez* Case on August 18, 2008.  The *Adighibe* Case was thereafter voluntarily dismissed in the Eastern District of New York, refiled in the District of New Jersey under Civil Action No. 09-1705 (NLH) (JS), and then consolidated with the *Torres-Hernandez* Case.

3

Florida, Illinois, Michigan, Missouri, New York, and Washington); and (3) unjust enrichment. Plaintiffs seek damages, injunctive relief and attorneys' fees as to each claim.

The parties informally exchanged information which would form the basis of an intelligent settlement discussion. Taking that information and information which Plaintiffs' counsel had gathered as part of its pre-filing investigation, and the assistance of retired judge John Hughes and the Court, the parties were able to reach a mutually acceptable structure for the settlement.

### B.      Reasons for the Settlement

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, and the likelihood of successfully obtaining or defeating class certification, and then prevailing on the ultimate merits of the suit, while being mindful of the considerable burdens and risks of litigation. Defendants believe that Plaintiffs' claims are defensible and deny all claims, including any liability for allegedly failing to properly and adequately disclose the true costs of making telephone calls using their calling cards. For their part, Plaintiffs believe that the claims against Defendants are meritorious, that a national or multi-state class of their customers could be certified for liability purposes, and that they would be successful on their claims if this matter proceeded to trial.

Nonetheless, the parties have concluded that the benefits of settlement in this case outweigh the attendant risks of litigation, in light of, among other considerations, the substantial benefits afforded to the Settlement Class by the Settlement, the uncertainties and difficulties associated with obtaining class certification for liability purposes, the legal and factual defenses that have been asserted by Defendants, the expense and length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that

resolution of the class claims, whenever and however determined, will likely be submitted for appellate review.

In light of the risks of continued litigation, Plaintiffs and their counsel believe that the Settlement, which provides benefits worth up to $8.4 million and requires Defendants to bear all costs of notice, administration, and attorneys' fees and expenses, represents an excellent result for the members of the Settlement Class, and merits preliminary approval.

C.      **The Settlement Terms**

The Settlement resolves all claims asserted against Defendants by the members of the Settlement Class upon the following general terms, by which Defendants agree to:

- Provide Replacement PINs of a value of up to $7.4 million for Class members submitting claims for use for domestic long distance calls and international long distance calls to selected countries.  The value of the replacement PINS will be $1.

- Defendants also have agreed to provide $1 million in prospective discounts in the form of free or reduced-rate minutes for present customers.

- Defendants have agreed to prospective injunctive relief relating to the disclosure of rates and charges similar to that to which they agreed with the New Jersey Department of Consumer Affairs.

The Settlement also provides for up to $2,050,000 for attorneys' fees, costs and incentive fees for the Class Representatives, subject to Court approval. The Agreement further provides for the form and manner of class notice, the method through which the proceeds of the Settlement will be provided to Settlement Class Members (the "Notice Plan"), and the procedure by which class counsel will apply for attorneys' fees and reimbursement of expenses incurred in

prosecuting this action. Thus, the Agreement contemplates that Plaintiffs will seek and obtain certification of the Settlement Class to effectuate both the Settlement and the Notice Plan.

**LEGAL ARGUMENT**

**POINT I**

**THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. There are three steps to be taken by the Court: (1) the Court must preliminarily approve the proposed settlement; (2) members of the Settlement Class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable and adequate. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (*"GM Trucks"); see also* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995).

**A.      The Standards for Preliminary Approval**

Before sending notice of the Settlement to the Settlement Class, the Court should approve the Settlement preliminarily.  The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of possible approval". *In re Prudential Sec. Inc. Limited Partnerships Litigation*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 237 (1995).  This preliminary determination establishes an initial presumption of fairness when the court finds that (1) the negotiations occurred at arms' length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation.  *See* 2 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.41, at 11-9; *GM Trucks,* 55 F.3d at 785. *See also* MANUAL FOR COMPLEX LITIGATION (THIRD)§ 30.41, at 236 (1995).

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate.  That decision is made only at the

7

final approval stage, after notice of the settlement has been provided to the class members and they have had an opportunity to voice their views of the settlement. *See* 38 J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 23.80[2.-1] at 23-479.  Preliminary approval is merely the prerequisite to providing such notice, so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response."  *Williams* v. *Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983).

As noted by the Third Circuit Court of Appeals, "[the] preliminary determination establishes an initial presumption of fairness".  *GM Trucks*, 55 F.3d at 785. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing"  MANUAL FOR COMPLEX LITIGATION (SECOND), § 30.44 (1985).

Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval.  *See Horton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*., 203 F.R.D. 403, 416 (S.D.Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

The opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *Id.*  Here, experienced counsel for the parties, after a long course of adversarial negotiations, supervised mediation and settlement discussions, have concluded that the proposed Settlement is in the best interests of their respective clients (and, in the case of Plaintiffs'

8

counsel, of the Settlement Class). The parties had ample opportunity to fully inform themselves regarding the merits of their and their adversary's claims and defenses. Further, the Settlement does not favor one group of putative class members over others, or provide richer results for the named plaintiff class representatives.

In addition, the Settlement Agreement satisfies a preponderance of the nine factors enunciated in *Girsh* v. *Jepson,* 521 F.2d 153, 157 (3d Cir. 1975), and is thus fair, reasonable and adequate. Specifically, the proposed class settlement offers Plaintiffs several advantages, including compensation for their alleged injuries with no obligation to pay attorneys' fees and a relatively speedy resolution of their claims. Considering the likely duration and complexity of the litigation by comparison, the substantially similar settlement brokered by one of Defendants' competitors, which provided the initial framework for the agreement in this case, was arrived at after more than four years of costly litigation, and the risks of establishing damages in an industry where proof of purchase is rarely preserved by putative class members, the proposed settlement is significant when compared to the best possible recovery. Certainly, the Settlement falls within the "range of possible approval." It should, therefore, be submitted to the Settlement Class members for their consideration, and this Court should schedule a hearing to determine whether the Settlement is "fair, reasonable, and adequate" to the Settlement Class and should be approved by the Court.

**B.     The Proposed Method of Class Notice is Appropriate**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B); *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002). The notice must concisely and clearly state

in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and bow members may be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).

In this case, where the parties seek to simultaneously certify a settlement class and settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement). *See, e.g., Zimmer Paper Prods., Inc.* v. *Berger & Montague, P.C.,* 758 F.2d 86, 90-91 (3d Cir. 1985).

The proposed method of providing notice to the Settlement Class meets the requirements of Rule 23(c)(2) by providing for a comprehensive Notice Plan.  As shown by the Agreement and enumerated in its exhibited proposed Order Granting Motion for Preliminary Approval of Class Action Settlement and Directing Dissemination of Class Notice (the "Proposed Order of Preliminary Approval"), the Settlement requires multiple forms of notice, including:

- By accessing a discrete settlement website through a link on www.stisettlement.com, www.freedweiss.com, www.carellabyrne.com; and www.nagelrice.com;

- by publishing a summary form of the Notice (the "Summary Notice"), in a form substantially similar to that exhibited to the Agreement, in over 100 newspapers throughout the nation;

- by providing direct mail notice to all calling card customers whose identification information is reasonably accessible from Defendants' business records; and

- by providing a notice voice prompt on all current Defendants calling card access numbers and customer service numbers until 14 business days prior to the fairness hearing seeking final approval of the Agreement.

The proposed Notice itself also meets the requirements of Rule 23(c)(2). The Notice is accurate and informative. It also describes the terms and benefits of the settlement, the date, time and place of the hearing on final settlement approval, the procedures and deadlines for submitting comments, objections, and requests for exclusion, the general terms of class counsel's application for attorneys' fees and expenses, a description of the proposed plan for providing the Refund PINs, and several other matters of possible interest.

## POINT II

## <u>A SETTLEMENT CLASS SHOULD BE CERTIFIED</u>

It is well-settled that the Court may certify a class for settlement purposes, provided that it engages in a Rule 23(a) and (b) inquiry.  *In re Community Bank of N. Va.,* 418 F.3d 277, 299 (3d Cir. 2005); *GM Trucks,* 55 F.3d at 786.  While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc.* v. *Windsor,* 521 U.S. 591, 619, 622 (1997).  The settlement is relevant in that "a district court need not inquire whether the case, if tried, would present intractable management problems."  *Community Bank,* 418 F.3d at 300, quoting *Amchem Prods.,* 521 U.S. at 620 (internal citation omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 314 (3d Cir. 1998).

While Defendants would certainly argue that class issues, if the case were to be fully litigated on its merits, would present serious management problems, the Court need not be concerned with trial management issues in the settlement context.  Instead, it need only consider "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.  That dominant concern persists when settlement, rather than trial, is proposed." *Community Bank;* 418 F.3d at 299, quoting *Amchem Prods,,* 521 U.S. at 621. The facts here demonstrate the suitability of this action for class certification for settlement purposes.

To be certified, a settlement class in which the class members receive money damages must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and the so-called "predominance of common issues" and

"superiority of the class action device" requirements of Rule 23(b)(3). *Community Bank;* 418 F.3d at 302.  In this case, each of the above requirements is fully satisfied.

### A.  <u>Numerosity</u>

The class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(l).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham,* 275 F.3d 220, 227-28 (3d Cir. 2001).  "Class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 467 (E.D.Pa. 2000).  Although the precise number of Settlement Class members cannot be determined because all of Defendants' end users purchased its calling cards at local retail locations (such as convenience stores) without providing any personal identification information, by its very nature, the Settlement Class includes literally thousands of members. Thus, numerosity is readily established.

### B.  <u>Commonality</u>

The commonality requirement is satisfied if the named plaintiff share at least one question of fact or law in common with the class.  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "Because the requirement may be satisfied by a single common issue, it is easily met." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d. Cir. 2004); *Fry*, 198 F.R.D. at 467.  Clearly, there are questions of law and fact common to the Settlement Class, the resolution of which would advance the litigation. *See id*. at 467 (existence of single common issue sufficient for certification).   A simple reading of the Amended Complaint demonstrates that there are numerous questions of law or fact common to the Settlement Class. These include whether:

    a.    Whether Defendants imposed standardized conditions, fees and surcharges on uses of its Cards;

b.     Whether Defendants legibly, clearly and conspicuously disclosed the standardized conditions, fees and surcharges on uses of its Cards;

c.     Whether Defendants legibly, clearly and conspicuously disclosed the value of its Cards and how much calling time consumers like Plaintiffs and Class Members were, actually buying when they purchased Defendants' Cards;

d.     Whether consumers can reasonably expect that, by paying the stated price of Defendants' Prepaid Calling Cards they are buying predominately calling time;

e.     Whether Defendants' course of conduct and omissions are material;

f.     Whether Plaintiffs and Class Members would have purchased Defendants' Prepaid Calling Cards had they known that by paying the stated price of Defendants' Prepaid Calling Card they were not predominately buying calling time;

g.     Whether Defendants engaged in the knowing omissions of material facts with the intent that Plaintiffs and Class Members would rely on such omissions;

h.     Whether Defendants engaged in deceptive, unfair or unconscionable acts or practices;

i.     Whether Defendants were unjustly enriched through their course of conduct;

j.     Whether Plaintiffs and members of the Class have sustained ascertainable losses by reason of Defendants' wrongful course of conduct and, if so, the proper measure of those losses;

k.     Whether Plaintiffs and members of the Class are entitled to injunctive and/or other equitable relief; and

l.     Whether Plaintiffs and the Class are entitled to declaratory judgment.

## C.     <u>Typicality</u>

The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members."  *Stewart,* 275 F.3d at 227. It is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).  Cases challenging the same unlawful conduct that affects both the named plaintiffs and the class usually satisfy the typicality requirement, even if varying fact patterns

may underlie individual claims.  *Baby Neal,* 43 F.3d at 58.  A claim will not be deemed atypical if it "arises from the same event or practices or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992).

Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs' claims arise from the same course of conduct by Defendant toward themselves and members of the Class.  Plaintiffs, like other members of the Class, purchased Prepaid Calling Cards, did not receive the full value promised by Defendants, and suffered monetary losses as a result of Defendants' course of conduct.  There is no conflict between the Plaintiffs' claims and those of the class, and the typicality requirement is clearly met.

### D.    <u>Adequacy of Representation</u>

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).  A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors: the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation, and he or she must not have interests antagonistic to those of the class.  *See, e.g., Prudential,* 148 F.3d at 312; *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982).

As was set forth in the prior motion for the appointment of Interim Class Counsel, Plaintiffs' counsel is qualified, experienced and able to conduct this litigation.  Carella, Byrne, Cecchi, Olstein, Brody & Agnello, Freed & Weiss LLC, and Nagel Rice LLC all specialize in class action and other complex litigation in courts throughout the country, including consumer, securities, corporate governance, healthcare and antitrust litigation.  In addition, Plaintiffs

themselves will fairly and adequately represent the interests of the Settlement Class. Plaintiffs, like the rest of the members of the Settlement Class, purchased one or more types of Defendants' calling cards, and allege that they were harmed by Defendants' alleged misleading advertising regarding call rates and hidden charges and fees. In short, plaintiffs' interests are coextensive with — not antagonistic to — those of the unnamed, absent members of the Settlement Class.

### E.   Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The existence of individual questions of fact does not *per se* preclude class certification. *Eisenberg v. Gagnon,* 766 F.2d 710, 787 (3d Cir. 1985). Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623.

Class certification is generally appropriate where a defendant has engaged in a pattern of uniform activity that is challenged by the complaint. *See id.* at 624 (predominance requirement readily established in cases alleging consumer fraud); *Prudential,* 148 F.3d at 314-15 (predominance requirement satisfied where class members' claims arise from common scheme by defendant). In addition, the common question of law in this action – namely, whether Defendants' practice of allegedly concealing hidden and excessive usage charges or inadequately disclosing the "true costs" of using its calling cards violated the NJCFA and common law – predominates over any individual legal issues that may exist. Certification of the Settlement

Class is therefore warranted under Rule 23(b)(3) because questions of law and fact predominate over questions affecting only individual class members.

In addition, a class action is superior to other methods of litigation by the Settlement Class Members of the claims identified in the Amended Complaint. Each of those claims, taken individually, is of such a relatively low dollar value that, as a practical matter, absent the use of the class action device, it would be too uneconomical and inefficient for any individual plaintiff to finance a litigation asserting such claims through trial and appeal. *Weiss v Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004)(without class action device small consumer claims would go unredressed); *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

In sum, because each of the elements of Rule 23(a) and 23(b)(3) is satisfied, this action should be certified as a class action for purposes of effectuating the Settlement.

**F.     Notice to the Class Is Reasonable Under the Circumstances**

Rule 23(c)(2)(B) and (e) provide that the court must make a determination of the best notice practicable under the circumstances. While individual notice to all class members who can be identified through reasonable effort is required, there is no definitive standard for determining what constitutes the best notice practicable where class members cannot be identified through reasonable efforts. Mail and publication may be the best notice practicable in many circumstances. *See Zimmer Paper Prod.,Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1990). What constitutes reasonable effort as well as what constitutes the best notice practicable under the circumstances depends upon the individual facts in the case. *See In re*

*Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 232 (D.N.J. 1997)(quoting *Carlough v. Amchem Products*, 158 F.R.D. 314, 325 (E.D.Pa. 1993)("In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable")

Here, most of the class members cannot be readily identified because of the nature of the product involved.  Class members generally do not deal directly with Defendants.  Rather, they purchase Defendants' calling cards from retailers, generally on a cash basis, so there is no record of the identity of most purchasers.  Defendants have created a publication notice plan which is aimed at reaching  as many class members as possible under the circumstances.

While the parties do not know the identity of individual class members, Defendants do have sales records indicating the geographical areas in which their cards sell, and the ethnic groups to which brands of cards are directed.  They engaged Kinsella Media, LLC to take that data and create a publication plan which would direct publication notice in the geographical areas and ethnic publications in those areas which match up with the distribution of Defendants' sales of their calling cards, so that the publications in which notice will be published are the type which would generally be read by the persons who would typically purchase Defendants' calling cards. The publication plan is more fully described in the Declaration of Katherine Kinsella filed herewith.  This publication notice is combined with notice on Defendants' calling cards with a toll-free number to call about the settlement, plus posting notice of the settlement on discrete websites.  The parties believe that this is the best practicable notice under the circumstances. *Compare In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 252 (D.Del. 2002) ("Although individual notice was not reasonable or even possible to consumers, given the large number of potential consumer class members, the best notice practicable under the circumstances

18

was given by publishing the summary notice in newspapers and magazines which were likely to be read by potential class members and which had a combined circulation of 115 million people. The summary notice provided potential class members with an address and toll-free telephone number from which they could obtain the full notice and claims packet, as well as the website address at which they could view or download the information themselves.")

Finally, the form and content of the proposed Notice should be approved by the Court. Rule 23(e) requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available for the court files; and (4) that any class member may appear and be heard at the Fairness Hearing. See 2 *Newberg on Class Actions*, §8.32. Under Rule 23(c), the Court should consider the contents of class notice as well as the method of dissemination. *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 328 (E.D.Pa. 2007); *In re Prudential*, 148 F.3d at 327. The proposed notices annexed to the Settlement Agreement satisfied each of these requirements.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court enter an order: (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Settlement Class; (3) approving their proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider their request for final approval of the Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses.

> CARELLA, BYRNE, BAIN, CECCHI,
> OLSTEIN, BRODY & AGNELLO
> Attorneys for Plaintiff
> ORLANDO S. RAMIREZ
>
>
> By:___/s/ James E. Cecchi_____
>         JAMES E. CECCHI
>
> NAGEL RICE, LLP
> Attorney for Plaintiff
> ALBERTO TORRES-HERNANDEZ
>
>
> By:___/s/ Bruce H. Nagel_____
>         BRUCE H. NAGEL

Dated:  July 12, 2010

Paul M. Weiss
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiff
ORLANDO S. RAMIREZ